**In re Michael RUBIN, Mannie Rubin, Paula Eilbott, Beth Lipson, and Miriam Emmer, Trustee of Miriam Emmer Trust, Relators,**

v.

**The Honorable Ron ENNS, Respondent.**

**No. 07–99–0385–CV.**

Court of Appeals of Texas, Amarillo.

Jan. 7, 2000.

---

JOHN T. BOYD, Chief Justice.

In this original proceeding, relators Michael Rubin, Mannie Rubin, Paula Eilbott, Beth Lipson and Miriam Emmer seek a writ of mandamus requiring respondent, the Honorable Ron Enns, Judge of the 69th District Court of Moore County, to disqualify the law firm of Templeton, Smithee, Hayes, Fields, Young & Heinrich [the Templeton firm] from representing Westgate Petroleum, Inc., Miles O'Loughlin, Scott White, James L. Bradley, James Ramsey, Vicky Ramsey, and Panhandle Oil & Gas, Inc. For reasons we later discuss, we deny the petition.

The underlying suit is pending in the 69th District Court of Moore County and is a consolidation of two causes styled *Michael Rubin, et al v. Westgate Petroleum, Inc. et al.*, cause number 94–52, and *Miles O'Loughlin, Scott White, James Bradley, and Warren Chisum, a Texas General Partnership v. Flavian Oil Co.*, cause number 96–79. Plaintiffs in the underlying suit allege that they are the oil and gas working interest owners under six sections of land in Moore County and that certain of the defendants are the operators of ten oil and gas wells on the land under a farmout agreement. Plaintiffs brought suit against the operators seeking, *inter alia*, cancellation of the farmout agreement, quiet title as to all dry gas rights on the premises, and a declaration of the legal rights between the parties pertaining to the oil and gas produced from certain wells on the premises. Plaintiffs [hereinafter relators] now seek writ of mandamus in this court, on the grounds that the trial court improperly denied their request for disqualification of the Templeton firm, counsel for the real parties in interest. In seeking the writ, relators argue that because a Templeton firm legal assistant had previously worked for relators' counsel, that firm should be disqualified from representing the real parties in interest.

Inda Crawford was employed by the law firm of Sheets & Holcomb (now Hicks, Thomas & Lilienstern) as a legal assistant

Hicks, Thomas & Lilienstern, Jody Sheets, D. Clay Holcomb, Amarillo, for Relators.

Templeton, Smithee, Hayes, Fields, Young & Heinrich, Joe W. Hayes, Amarillo, for Real Parties in Interest.

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

for a number of years prior to May 1999. Hicks, Thomas & Lilienstern represent relators in the underlying case. Crawford worked for Sheets & Holcomb when the underlying suit was brought, and relators were billed for 170.25 hours of work done by Crawford on the case. In May 1999, Crawford went to work for the Templeton firm, counsel for the real parties in interest. Because of this employment history, relators filed a request in the trial court to disqualify the Templeton firm from representing the real parties in interest, which was denied by the trial court. Hence, this mandamus action seeking to compel the trial judge to enter the disqualification order.

Mandamus is an extraordinary remedy and is only available if the applicant can establish the lack of an adequate legal remedy and a clear abuse of discretion by the trial court in ruling as it did. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992) (original proceeding); *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 918 (Tex.1985) (original proceeding); *Spears v. Fourth Court of Appeals*, 797 S.W.2d 654, 656 n. 4 (Tex.1990). In this case, it is clear that relators have no adequate remedy at law and mandamus is the appropriate method to review the issue of disqualification.

The test for abuse of discretion is whether the trial court acted without reference to any guiding rules and principles or whether the act was arbitrary and unreasonable. *Johnson*, 700 S.W.2d at 918. The fact that a trial judge may decide a matter within his or her discretion in a different manner than an appellate judge in similar circumstances does not demonstrate that an abuse of discretion has occurred. *Downer v. Aquamarine*, 701 S.W.2d 238, 241–42 (Tex.1985).

In *Phoenix Founders, Inc. v. Marshall*, 887 S.W.2d 831, 835 (Tex.1994), the court had occasion to discuss at some length circumstances such as the one before us in which a paralegal has changed employment from a law firm on one side of a case to a law firm on the other side of the case. In doing so, it recognized the countervailing interests involved and noted with approval the ABA suggestion that any restrictions on the nonlawyer's employment should be held to the minimum standard necessary to protect confidentiality of client information. *Id.* at 835, *citing* ABA Committee on Ethics and Professional Responsibility, Informal Op. 1526 (1988). In the course of its discussion, the court held that a paralegal or legal assistant who changes employment and who has worked on a case is subject to a conclusive presumption that confidences and secrets were imparted. *Id.* at 834. This was necessary, it explained, to ensure the protection of the client through which such information was obtained. However, the court disagreed with the argument that paralegals should be conclusively presumed to have shared that confidential information with their successor employers.

The court held that client confidences might be adequately safeguarded if a firm hiring a paralegal from another firm took "appropriate steps" to ensure that no confidential information was revealed. *Id. at* 835. In the absence of consent of the former firm's client, disqualification would always be required when confidential information has, in fact, been revealed, or when screening would be ineffective, or when the nonlawyer would be forced to work on the opposing side of a case. However, the court held, disqualification ordinarily is not required as long as "the practical effect of formal screening has been achieved." *Id.*, quoting *In re Complex Asbestos Litigation*, 232 Cal.App. 3d 572, 283 Cal.Rptr. 732, 747 (1991).

In the recent case of *In Re American Home Products Corp.*, 985 S.W.2d 68 (Tex. 1998), the court was again concerned with the disqualification of counsel. In the course of its discussion, it reiterated its prior holding in *Phoenix Founders* that, while the presumption that a legal assistant obtained confidential information is not rebuttable, the presumption that the

information was shared with a new employer is rebuttable. The court observed that there is a marked distinction between lawyers and nonlawyers with respect to this rule. *Id.* at 75; *see also Phoenix Founders,* 887 S.W.2d at 834 and *Grant v. Thirteenth Court of Appeals,* 888 S.W.2d 466, 467 (Tex.1994). Such distinction was created to ensure that a nonlawyer's mobility would not be unduly restricted. However, the court emphasized that the only way the rebuttable presumption could be overcome would be 1) to instruct the legal assistant not to work on any matter on which the paralegal worked on during the prior employment, or regarding which the paralegal had information relating to the former employer's representation; and 2) "to take other reasonable steps to ensure that the paralegal does not work in connection with the matters on which the paralegal worked during the prior employment, absent client consent." *In Re American Home Products Corp.,* 985 S.W.2d at 75.

▮ The teaching of the above cases as applied to this case is that we must apply a tripartite test to determine whether proper "appropriate steps" have been taken to ensure confidentiality. While relators' counsel argued at submission that a different and more stringent rule should be applied in cases involving small law firms, we disagree. The "appropriate steps" test must be applied on a case-by-case basis, inasmuch as the supreme court has never elucidated a particularized test based on the size of the law firm. The size of the firm, with the increased possibility of disclosure in the more intimate atmosphere of a smaller group, is merely one circumstance to be considered in determining whether adequate screening has been instituted.

▮ To overcome the presumption that Crawford shared confidential information with her new employer, it must have been shown that:

1. the Templeton firm had instructed her not to disclose any information concerning relators that she may have learned during her prior employment;

2. the Templeton firm had instructed her not to work on any matter on which she had worked during her prior employment, or regarding which she had information relating to her former employer's representation; and

3. the Templeton firm had taken all other reasonable steps to ensure that she did not work in any way on matters on which she had worked during her former employment.

With regard to the third or "all reasonable steps" requirement, the screening steps have been referred to as the creation of a "Chinese Wall." In determining whether the Chinese Wall is sufficient to preclude the Templeton firm's disqualification, we must ask whether sufficient measures have been taken to reduce the potential for the misuse of confidences. *See Arzate v. Hayes,* 915 S.W.2d 616, 619 (Tex.App.—El Paso 1996, writ dism'd).

Because of the sensitive nature of the question involved, it is necessary to recount the facts before the trial court at the time of its refusal to disqualify. At oral argument, both parties referred to a telephone conference with the trial judge, at which time he informed them that he would take the matter under advisement and rule at a later time. Hence, there is nothing in the record concerning the content of any statements made, or matters presented to, the trial judge during that conversation. However, the record before us does show that he had before him affidavits executed by Jody Sheets and Paula Eilbott attesting to Crawford's familiarity with the strategies, pleadings, conferences, etc., of the underlying lawsuit. The affidavits noted relators' concerns that confidential information could be given to opposing counsel, even unintentionally, and that it would be impossible to rebut the presumption of harm. Sheets particularly emphasized his belief that "the size and structure of the Templeton law firm render [sic] it

impossible to rebut the presumption of disclosure."

The trial court also had before it copies of a May 17, 1999 memo from Joe Hayes, managing partner of the Templeton firm, addressed to all the lawyers and staff of the Templeton firm. In the memo, Hayes designated two cases (one of which underlies this proceeding) as those about which Crawford might possess confidential information. In the memo, the recipients were instructed that Texas Disciplinary Rules 1.05(b)(1) and 5.03(a) prohibited them, as Crawford's supervising employers, "from revealing any confidential information she might have regarding the cases." The memo also advised that to satisfy the requirements of the Disciplinary Rules, as well as those set forth by the supreme court in the *In Re American Home Products Corporation* case, the firm was implementing the following six policies and procedures, effective immediately:

1. Inda shall not perform any work or take any action in connection with the *Westgate* case or the *Seger* case [the second, unrelated, case].

2. Inda shall not discuss the *Westgate* case or the *Seger* case, or disclose any information she has concerning these cases, with anyone.

3. No lawyer or staff member shall discuss the *Westgate* case or the *Seger* case with Inda, or in her presence.

4. All computer information relating to the *Westgate* case and the *Seger* case shall be removed from the firm's computer system. No future information concerning either the *Westgate* case or the *Seger* case shall be stored in any electronic medium, but rather kept solely in hard copy form with the files in the respective case.

5. The files in the *Westgate* case and the *Seger* case shall be kept in locked files under my supervision. No one shall have access to those files other than me, and those to whom I have given specific authority to access these files. Inda shall not have access to

these files or the area where the files are to be maintained. At the close of each business day, all documents relating to these cases shall be placed in their respective files, which shall be returned to their storage places, which shall then be locked.

6. Inda shall not be given access to any of the files pertaining to the *Westgate* case or the *Seger* case, or their contents. None of the documents pertaining to either of these cases shall be disclosed to Inda, discussed with her, or discussed in her presence.

The memo closed with the admonition that "[W]e have a professional obligation to implement and follow the foregoing policies and procedures. Any violation of these policies and procedures shall be grounds for termination." Recipients of the memo were then directed to sign and return their copy of the memo to signify "your commitment to carrying out the foregoing policies and procedures."

The trial judge also had before him the July 2, 1999 affidavit of Joe W. Hayes. In that affidavit, he certified that he was the managing partner of the Templeton firm and was responsible for the hiring of employees, as well as the development of all policies and procedures concerning the operation of the firm, and as well, was responsible for the conduct of its employees. Hayes also listed the names of all the lawyers and employees of the law firm. He certified that the underlying cases were consolidated and treated by the firm as the "Westgate Case." He said that he and Brian Heinrich, another partner in the firm, had interviewed Crawford in the midpart of April 1999. The two agreed that the only cases in which the firm had an adverse interest to Hicks, Thomas and Lilienstern were the *Westgate* and *Seger* cases. He averred that he told Crawford that if she were employed by the Templeton firm, "anything she knew about the *Westgate* case or the *Seger* case could not be disclosed and that she would be

screened from those cases by a 'Chinese Wall.'" He said she agreed and they did not discuss the cases or her knowledge of them.

Hayes further averred that he and Crawford agreed that she would come to work on May 17, 1999. During the week of May 12, 1999, he formulated the policies and procedures set out in the memo to which we have previously referred. He arrived at the firm's office on May 17, 1999, at approximately 6:30 a.m., prior to the arrival of any of the employees or members of the firm. He met each of the employees and lawyers individually as they arrived, with the exception of John T. Smithee, who was in Austin. He discussed the policies and procedures set out in the memo with each individual as they arrived, obtained their agreement to them, and had each individual evidence his or her agreement by signing a copy of the memo and returning it to him. He said he had discussed the procedures with Smithee prior to May 17, 1999. Smithee agreed to them and, upon his return to Amarillo, signed a copy of the memo and delivered it to him.

Hayes further averred that there are two sections of the Templeton firm's offices separated by a reception area. Each section of the office was closed off by two sets of doors leading into the reception area. Crawford was given office space in the eastern section of the office while Hayes, Smithee, and Young had their offices in the western section of the office. Immediately after executing and returning their copies of the memo to Hayes, three employees in the eastern section of the office removed all information concerning the *Westgate* case from the firm's computer system and placed all the *Westgate* files in locked filing cabinets "for which they retained the keys under my supervision and control." He certified that he had instructed each of those employees that any information or work product later generated in the *Westgate* case would be kept in hard copy only in the *Westgate* files. No one was to have access to them or the

areas where they were kept in the western section of the office other than himself and the three employees working under his direct supervision. He also discussed with the employees that at the close of each business day, all documents relating to the *Westgate* case would be placed in their respective files, and returned to the storage area, which would then be locked.

Hayes also verified that his contact with the clients in the *Westgate* case was exclusively through Miles O'Loughlin, a lawyer. Hayes had discussed Crawford's employment with him and O'Loughlin had agreed to communicate only with Hayes concerning the *Westgate* case. He also averred that so far as was known to him, the policies and procedures set out in the memo had been followed without exception, that Crawford had not performed any work or taken any action for them in the *Westgate* case, that she had not discussed the case with anyone in the firm or disclosed any information she might possess. He concluded by saying that he had never discussed the case in her presence or heard anyone do so, and to his knowledge, Crawford had not been given access to any of the files in the case, nor had any of the information in the files been discussed with her or in her presence.

By supplemental affidavit dated July 12, 1999, Hayes averred that Crawford was employed as a legal assistant since May 17, 1999, was paid a set salary on a monthly basis, and did not share in any fees or expenses of the Templeton firm. He also emphasized that each of the lawyers and employees of the law firm, with the exception of Smithee, executed and returned to him a copy of the memo "prior to their commencing work, or having conversations with any other employee or lawyer at TSHFYH (the firm) on May 17, 1999."

The trial judge also had before him Crawford's affidavit. In it she averred that she had worked for Sheets & Holcomb from September 1, 1991 through February 28, 1999, and had worked for the law firm of Hicks, Thomas and Lilienstern,

the successor to Sheets & Holcomb from March 1, 1999 through April 30, 1999. She averred that during the mid-part of April, 1999, she was interviewed by Joe Hayes and Brian P. Heinrich. In the course of that interview, she and Hayes agreed that the Westgate and Seger cases were the only two cases in which the Templeton law firm and Hicks, Thomas and Lilienstern were representing opposite sides.

Crawford said that Hayes told her that if she were employed by the Templeton law firm, "anything I knew about the Westgate case or the Seger case could not be disclosed and that I would be screened from the cases by a 'Chinese Wall.'" She understood what was meant by that term and agreed to it. She also said that upon her arrival at the Templeton firm on May 17, 1999, her first day of employment, she was met by Hayes, who showed her a copy of the memo to which we have previously referred. They discussed the content of the memo and she agreed to its provisions prior to commencing work. She averred that she never discussed either of the cases with anyone at the Templeton firm, never disclosed or received any information, never saw any files, and that she had been advised that "I do not have access to those areas where the files are stored." She further agreed to "comply with and carry out all policies and procedures described in the Memo."

The trial judge also had before him affidavits executed by Vicki Cole, Tammie Aureli, and Linda Cunyus, employees of the Templeton firm, in which they assert that they were met by Hayes on May 17, 1999, were presented with the memo, and discussed and signed it prior to commencing work that day. They also asserted that they removed all references to the underlying cases from the firm's computer system and moved all the files and hard copy information pertaining to the cases into locked filing cabinets located in their offices. They were also instructed by Hayes that all of the information about the cases would be kept in locked files in their offices to which they would retain keys, that no one would have access to the files except them and Hayes, and at the close of each business day, all documents relating to the Westgate case would be placed in the respective files and returned to the locked filing cabinets. They also said they had never discussed the cases with Crawford, had never heard anyone discuss the cases with her, or in her presence, and that they would comply with all the memo practices and procedures.

The trial judge also had before him the July 1, 1999 affidavit of John T. Smithee. He averred that he was a partner in the Templeton firm and that during the first few days of the week of May 17, 1999, he was in Austin performing his duties as a State Representative. Prior to that date, he had discussed with Hayes the possibility of hiring Crawford and the fact that his firm would need to institute procedures and practices to prevent the disclosure of confidential information. When he returned to the offices of the Templeton firm, he executed the memo and returned it to Hayes. He also asserted that to his knowledge the requirements of the memo had been complied with without exception, he had no knowledge that any partner or employee had discussed the underlying cases with, or in the presence of, Crawford or that she had done any work on the case, and that he intended to comply with the requirements of the memo.

The judge also had before him the affidavit of Coleman Young, another partner in the Templeton firm. In his affidavit, he also said that upon his arrival at the offices of the Templeton firm on May 17, 1999, he was met by Hayes with a copy of the memo, discussed it with him and executed it. So far as he knew, the memo had been complied with and no one had discussed the underlying suit with Crawford or in her presence. He said he had reviewed copies of the pleadings and motions in the Westgate case in a secured area. After they were reviewed by him, they were either returned to the secured file room or

destroyed. He also said he intended to comply with all the requirements and procedures in the memo.

Finally, the judge had before him affidavits from the other partners and employees of the Templeton firm, in which each swore that he/she had been met by Hayes, was presented with and discussed the memo, and signed it prior to commencing work on May 17, 1999. Each of the affiants said that they never discussed the cases with Crawford and never heard it discussed in her presence. They averred that they intended to comply with the requirements and procedures in the memo.

Our review of the record before the trial court convinces us that we cannot say he abused his discretion in arriving at his decision to deny the motion to disqualify the Templeton law firm. Accordingly, relators' petition seeking mandamus relief must be, and is, denied.