In re Carmen M. BIVINS.

No. 10–05–00156–CV.

Court of Appeals of Texas,
Waco.

April 27, 2005.

---

Samuel W. Pettigrew Jr., Grand Prairie, for Appellant/Relator.

Mary Lou Shipley, Waxahachie, for Appellee/Respondent.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

PER CURIAM.

Carmen M. Bivins seeks a writ of mandamus directing Respondent, the Honorable Al Scoggins, Judge of the 378th District Court of Ellis County, to vacate an order granting her estranged husband Larry's motion to disqualify her attorney Sam W. Pettigrew, Jr. in their divorce.

Larry sought to disqualify Pettigrew because: (1) Pettigrew prepared Larry's will; (2) he prepared a warranty deed conveying a tract of land from Larry's father to Larry and the character of that property is presently disputed; and (3) he advised Larry regarding a contemplated adoption of Carmen's children from a prior marriage. Respondent granted Larry's motion to disqualify because "[m]ost of the divorce case will turn on the nature of the deed to [Larry] from his father" and "any testimony about the nature of that transaction ... would have to come from either [Larry] or Mr. Pettigrew."

Carmen contends that Respondent abused his discretion by granting the motion to disqualify because Larry failed to establish with specificity that Pettigrew violated a disciplinary rule. Carmen suggests that Rules of Disciplinary Procedure 1.05 and 1.09 are implicated in this case.

Larry responds that disqualification may be appropriate even if no disciplinary rule has been violated. Larry suggests that Rule 3.08 supports Respondent's ruling because Pettigrew is a potential witness.

 We will grant mandamus relief if a respondent has committed a clear abuse of discretion and the relator has no adequate legal remedy. *In re Nitla S.A. de C.V.,* 92 S.W.3d 419, 422 (Tex.2002) (orig.proceeding) (per curiam); *In re Chu,* 134 S.W.3d 459, 462 (Tex.App.-Waco 2004, orig. proceeding). There is generally no

other adequate legal remedy available to review the grant or denial of a motion to disqualify. *See Nitla*, 92 S.W.3d at 422. Thus, our review is limited to the question of whether Respondent clearly abused his discretion in granting the motion to disqualify. *Id.* "[A] clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion and may result in appellate reversal by extraordinary writ." *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (orig.proceeding) (per curiam) (quoting *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992) (orig.proceeding)).

■ "Disqualification is a severe remedy." *Nitla*, 92 S.W.3d at 422 (quoting *Spears v. Fourth Ct. of Apps.*, 797 S.W.2d 654, 656 (Tex.1990) (orig.proceeding)). Thus, a trial court which considers a motion to disqualify "must strictly adhere to an exacting standard to discourage a party from using the motion as a dilatory trial tactic." *Id.*; *Chu*, 134 S.W.3d at 464. When disqualification is sought because opposing counsel has received confidential information, the party moving to disqualify opposing counsel must show that: (1) opposing counsel's possession of the confidential information has caused actual harm to the movant; and (2) there are no lesser means available to remedy the harm. *See Nitla*, 92 S.W.3d at 423.

■ Larry is correct that the violation of a disciplinary rule is not an essential prerequisite for disqualification. *Id.* at 422. Rather, the disciplinary rules provide "guidelines—not controlling standards—for disqualification motions." *Id.*

Though the violation of a disciplinary rule is not essential, the parties focus on rules 1.05, 1.09, and 3.08 as potential bases for disqualification in this case. We do likewise. *See In re Users Sys. Servs., Inc.*,

22 S.W.3d 331, 334 (Tex.1999) (orig.proceeding).

Rule 1.05(b) provides in pertinent part:
[A] lawyer shall not knowingly:
(1) Reveal confidential information of a client or a former client to:

(i) a person that the client has instructed is not to receive the information; or

(ii) anyone else, other than the client, the client's representatives, or the members, associates, or employees of the lawyer's law firm.

(2) Use confidential information of a client to the disadvantage of the client unless the client consents after consultation.

(3) Use confidential information of a former client to the disadvantage of the former client after the representation is concluded unless the former client consents after consultation or the confidential information has become generally known.

(4) Use privileged information of a client for the advantage of the lawyer or of a third person, unless the client consents after consultation.

TEX. DISCIPLINARY R. PROF'L CONDUCT 1.05(b), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 1998) (TEX. STATE BAR R. art. X, § 9).

Rule 1.09(a) provides:
(a) Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client:

(1) in which such other person questions the validity of the lawyer's services or work product for the former client; or

(2) if the representation in reasonable probability will involve a violation of Rule 1.05; [or]

(3) if it is the same or a substantially related matter.

*Id.* 1.09(a).

Rule 3.08 provides in pertinent part:

(a) A lawyer shall not accept or continue employment as an advocate before a tribunal in a contemplated or pending adjudicatory proceeding if the lawyer knows or believes that the lawyer is or may be a witness necessary to establish an essential fact on behalf of the lawyer's client, unless:

(1) the testimony relates to an uncontested issue;

(2) the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony;

(3) the testimony relates to the nature and value of legal services rendered in the case;

(4) the lawyer is a party to the action and is appearing pro se; or

(5) the lawyer has promptly notified opposing counsel that the lawyer expects to testify in the matter and disqualification of the lawyer would work substantial hardship on the client.

(b) A lawyer shall not continue as an advocate in a pending adjudicatory proceeding if the lawyer believes that the lawyer will be compelled to furnish testimony that will be substantially adverse to the lawyer's client, unless the client consents after full disclosure.

*Id.* 3.08(a), (b).

Carmen contends that no violation of Rule 1.09 is shown because Larry was not Pettigrew's client in the deed transaction, because Pettigrew's involvement in preparing the deed will not "in reasonable probability ... involve a violation of Rule 1.05," and because the deed transaction did not concern the same or a substantially related matter.

Larry responds that Rule 3.08 is implicated because Pettigrew is a potential witness regarding the character of the property conveyed in the deed transaction.

■ Larry testified that he paid Pettigrew's fee for preparation of the deed. Larry and Carmen dispute whether the property Larry's father conveyed to Larry is community property or Larry's separate property. Larry testified that he considers Pettigrew's participation in that transaction to give Carmen "an unfair advantage" in the divorce.

Although Larry's motion alleges that Pettigrew represented only his father in the deed transaction, Larry testified that he paid Pettigrew's fee to draft the deed and that he considered Pettigrew to represent him as well in the transaction. Larry testified that he shared "confidential information" during the deed transaction, though he never explained what this confidential information was. Rather, Larry explained that, because the character of the property is a contested issue in the divorce, he considers Pettigrew's representation of Carmen to be harmful.

■ An attorney-client relationship is not created where a person hires an attorney in a non-legal capacity. *See Pondrum v. Gray,* 298 S.W. 409, 412 (Tex. Comm'n App.1927, holding approved); *State v. Delany,* 149 S.W.3d 655, 662 (Tex.App.-Houston [14th Dist.] 2004, pet. filed); *Sutton v. Est. of McCormick,* 47 S.W.3d 179, 184–85 (Tex.App.-Corpus Christi 2001, no pet.); *Harlandale Indep. Sch. Dist. v. Cornyn,* 25 S.W.3d 328, 332 (Tex.App.-Austin 2000, pet. denied); *see also* 1 STEVEN GOODE ET AL., GUIDE TO THE TEXAS RULES OF EVIDENCE § 503.2 & nn. 10–13 (3d ed.2002); Roy Robert Ray, *Law of Privilege in Texas,* 12 TEXAS L.REV. 143, 147–48 (1934). Thus, an

attorney-client relationship does not arise when a person hires an attorney to draft an instrument but does not seek the attorney's advice with respect to that instrument. *Id.* In such cases, the attorney is considered a "mere scrivener." *See Sutton,* 47 S.W.3d at 184; *Childress v. Tate,* 148 S.W. 843, 844 (Tex.Civ.App.-Fort Worth 1912, writ denied).

Here, Larry testified that he paid Pettigrew to prepare the deed and that confidential communications were disclosed during the deed transaction. Thus, Larry provided some evidence to support a finding that an attorney-client relationship existed between Pettigrew and himself.

Rule 1.09 provides that an attorney "shall not" represent the adversary of a former client "if the representation in reasonable probability will involve a violation of Rule 1.05" or if the representation involves "the same or a substantially related matter." TEX. DISCIPLINARY R. PROF'L CONDUCT 1.09(a)(2), (3).[1] We agree with Larry that, because the character of the property conveyed is a contested issue in the divorce, the prior representation involves "a substantially related matter." *See id.*

■ A violation of Rule 1.05 with respect to a former client occurs when the attorney reveals confidential information to an unauthorized third person or uses confidential information to the disadvantage of the former client without the client's consent. *Id.* 1.05(b)(1), (3). Larry's contention is that Pettigrew's representation of Carmen will in reasonable probability involve Pettigrew using confidential information obtained during the deed transaction to Larry's disadvantage in litigating the character of the property Larry's father conveyed to him.

■ Property obtained during a marriage is presumptively community property. TEX. FAM.CODE ANN. § 3.003(a) (Vernon 1998). A party who contends that property is separate property bears the burden of proving that contention by clear and convincing evidence. *See id.* § 3.003(b) (Vernon 1998); *Zagorski v. Zagorski,* 116 S.W.3d 309, 314 (Tex.App.-Houston [14th Dist.] 2003, pet. denied); *Beard v. Beard,* 49 S.W.3d 40, 55 (Tex.App.-Waco 2001, pet. denied).

■ With regard to real property acquired during the marriage, this burden may be met by proving that the property in question was acquired "by gift, devise, or descent." TEX. FAM.CODE ANN. § 3.001(2) (Vernon 1998). This burden may also be met by proving that separate funds were used to purchase the property. *See Irvin v. Parker,* 139 S.W.3d 703, 708 (Tex.App.-Fort Worth 2004, no pet.); *Zagorski,* 116 S.W.3d at 316. Because Larry's father was alive when the deed in question was executed, the property cannot have been acquired by Larry by devise or descent. Thus, Larry will have the burden of proving at trial that the property was a gift or that he used separate funds to purchase it.

If Larry purchased the property with separate funds, he can prove the source of funding without regard to any information he gave to Pettigrew. Conversely, if Larry contends that the property was given to him by his father, he can testify to this fact. If he did so, it would then be incumbent upon Carmen to rebut this testimony. In this instance, Carmen might choose to call Pettigrew as a rebuttal witness. Thus,

---

1. Subsection (a)(1), which applies when the new client "questions the validity of the lawyer's services or work product for the former client," does not apply here. *See* TEX. DISCI-PLINARY R. PROF'L CONDUCT 1.09(a)(1), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 1998) (TEX. STATE BAR R. art. X, § 9).

Pettigrew's knowledge of the details of the transaction poses at least a threat of harm to Larry.

The potential of Pettigrew testifying invokes Rule 3.08. Rule 3.08(a) applies when an attorney may be called to testify regarding an essential fact of the client's case. *See* Tex. Disciplinary R. Prof'l Conduct 3.08(a). Conversely, Rule 3.08(b) applies when an attorney may be compelled to testify in a manner "that will be substantially adverse to the lawyer's client." *Id.* 3.08(b). In either instance however, "rule 3.08 'should rarely be the basis for disqualification.'" *Chu,* 134 S.W.3d at 464 (quoting *May v. Crofts,* 868 S.W.2d 397, 399 (Tex.App.-Texarkana 1993, orig. proceeding)); *accord Ayres v. Canales,* 790 S.W.2d 554, 556 n. 2 (Tex.1990) (orig.proceeding); *accord* Tex. Disciplinary R. Prof'l Conduct 3.08 cmt. 9.

From the limited record before us, it cannot be determined whether Pettigrew would testify that the conveyance from Larry's father to Larry was a gift or whether Pettigrew even possesses knowledge of facts relevant to this issue. However, a party seeking disqualification of an attorney under Rule 3.08 "must present evidence that the testimony of the lawyer is 'necessary' and that it goes to an 'essential fact' of the nonmovant's case." *Chu,* 134 S.W.3d at 464 (quoting *In re A.M.,* 974 S.W.2d 857, 864 (Tex.App.-San Antonio 1998, no pet.)); *accord May,* 868 S.W.2d at 399; Tex. Disciplinary R. Prof'l Conduct 3.08(a).

The comments to Rule 3.08 recognize the potential for abuse when the rule is used as a basis for disqualification. *See* Tex. Disciplinary R. Prof'l Conduct 3.08 cmts. 9–10. Thus, a party seeking disqualification in this situation should "demonstrate *actual prejudice* to itself from the opposing lawyer's service." *Id.* (emphasis added); *accord Ayres,* 790 S.W.2d at 558; *May,* 868 S.W.2d at 399.

Larry at best established a potential for prejudice to himself from Pettigrew's role as Carmen's counsel in the divorce. *Cf. id.* He did not at all establish that Pettigrew's testimony will be "necessary" to establish an "essential element" of Carmen's case. *See Chu,* 134 S.W.3d at 464; *A.M.,* 974 S.W.2d at 864. Conversely, assuming Pettigrew might testify in a manner adverse to Carmen, "that is a matter to be resolved between [Pettigrew] and [Carmen] or in a subsequent disciplinary proceeding." Tex. Disciplinary R. Prof'l Conduct 3.08 cmt. 10.

To have Pettigrew disqualified, Larry *"must show"* that "disqualification is necessary because the trial court lacks any lesser means to remedy [his] harm." *Nitla,* 92 S.W.3d at 423 (emphasis added). From the record, it does not appear that Larry proffered any lesser alternatives to Respondent or that Respondent on his own considered lesser alternatives. By failing to consider lesser alternatives such as prohibiting Pettigrew from testifying about the deed transaction, Respondent misapplied the law and committed a clear abuse of discretion. *See id.; see also E.I. DuPont,* 136 S.W.3d at 223.

Because Larry failed to establish actual prejudice and because Respondent failed to consider lesser alternatives, Respondent abused his discretion by granting the motion to disqualify. Carmen has no adequate remedy at law. Therefore, we conditionally grant the requested writ of mandamus. The writ will issue only if Respondent fails to advise this Court in writing within fourteen days after the date of this opinion that he has vacated the order granting Larry's motion to disqualify Pettigrew.