**In re COLUMBIA VALLEY HEALTH-CARE SYSTEM, L.P. d/b/a Valley Regional Medical Center, Relator.**

No. 08–0995.

Supreme Court of Texas.

Argued Feb. 18, 2010.

Decided Aug. 27, 2010.

Mike A. Hatchell, Charles R. Watson Jr., Locke Lord Bissell & Liddell LLP, Austin, TX, Thomas F. Nye, Robert William Clore, Gault Nye & Quintana, LLP, Corpus Christi, TX, William Gault, Vidaurri Lyde Gault & Quintana, Brownsville, TX, for Relator.

Juan A. Magallanes, Magallanes & Hinojosa, P.C., Brownsville, TX, Carlos Escobar, Magallanes and Hinojosa, P.C., Mission, TX, Gilberto Hinojosa, Magallanes & Hinojosa, P.C., Brownsville, TX, Steve A. Kamel, Steve A. Kamel, P.C., Allen Jack Washburn, Murphrey & Washburn, Houston, TX, for Real Party in Interest.

Ronald G. Hole, Hole & Alvarez, L.L.P., McAllen, TX, for Bangalore N. Lakshmikanth, M.D.

W. Richard Wagner, Patterson Wagner & Rocheleau LLP, San Antonio, TX, for Carmen Maria De La Cruz Rocco, M.D.

Steven M. Gonzalez, Marion R. Lawler III, Gonzalez Palacios LLP, McAllen, TX, for Frances M. Sweeney, M.D.

Jeffrey D. Roerig, Roerig Oliveira & Fisher, LLP, Brownsville, TX, for Settled Schumacher Defendants.

Reagan W. Simpson, King & Spalding LLP, Austin, TX, for amicus curiae, Trans–Global Solutions, Inc.

Amy J. Schumacher, Strasburger & Price LLP, Austin, TX, for amicus curiae, Guaranty Insurance Services, Inc.

Justice MEDINA delivered the opinion of the Court.

In this original mandamus proceeding, we must determine whether a law firm should be disqualified from the underlying suit on the basis of a legal assistant's work on the matter after previously having worked on the same matter while employed by opposing counsel. We have previously held that a firm can usually avoid disqualification when hiring an assistant who previously worked on a matter for opposing counsel if the firm (1) instructs the assistant not to work on the matter, and (2) takes other reasonable steps to shield the assistant from working in connection with the matter. *In re Am. Home Prods. Corp.*, 985 S.W.2d 68, 75 (Tex.1998). We have not, however, set forth the types of "other reasonable steps" that are required, nor have we addressed whether disqualification is required when an assistant actually works on the matter for the second firm.

Because the legal assistant's employer did not take effective reasonable steps to shield the assistant from working on the case, and the assistant actually worked on the case at her employer's directive, we hold that disqualification is required and direct the trial court to grant the defendant's motion to disqualify and recuse plaintiffs' counsel.

I

In the underlying case, the plaintiffs, Yvonne and Alberto Leal ("the Leals"), brought a medical malpractice suit against Columbia Valley Healthcare System, L.P., doing business under the name Valley Regional Medical Center ("Valley Regional"). Valley Regional filed a motion to disqualify the Leal's counsel, Magallanes & Hinojosa, P.C., because of its employment of legal assistant Margarita Rodriguez.

Rodriguez had previously worked on the Leal case while employed by Valley Regional's counsel, William Gault, at Brin & Brin, P.C.,[1] assisting Gault from the inception of the suit. While employed by Brin & Brin, Rodriguez was a custodian of records and was responsible for filing many privileged documents concerning the suit, including investigative material, discussions with consulting experts, defense strategy, settlement negotiations, strategy for adding other parties to the suit, and attorney notes. Rodriguez also prepared correspondence to Valley Regional and its insurer. Before leaving Brin & Brin, Rodriguez signed a confidentiality agreement obligating Rodriguez not to work on any matter that she had previously worked on for Brin & Brin.

Approximately eleven months after leaving Brin & Brin, Rodriguez was hired by Magallanes & Hinojosa, a three-attorney firm, as a legal assistant for attorney J.A.

---

1. Attorneys from Brin & Brin, P.C. subsequently formed a new law firm called Vidaurri, Lyde, Gault & Quintana, L.L.P., where Gault now practices and represents Valley Regional in the underlying suit.

Magallanes. Magallanes hired Rodriguez with knowledge that she had worked on the Leal case for Brin & Brin. At the time Rodriguez was hired, Magallanes orally instructed her not to work on any case with which she had prior involvement, specifically including the cases she had worked on while at Brin & Brin. The firm did not have any written screening policies in effect at the time of Rodriguez's hiring. The firm's other legal assistant, Luz Castro, was assigned to handle the Leal file. Magallanes later suffered a brain aneurysm, requiring hospitalization. Magallanes & Hinojosa associated with another firm to take over as lead attorneys, while Magallanes' role in the matter was significantly reduced. However, Magallanes testified that he had continuing participation in the case after his hospitalization, such as attending a settlement hearing and that he anticipated involvement during trial.

Despite the oral instructions from Magallanes, Rodriguez had contact with the Leal file on a few occasions while working at Magallanes & Hinojosa. According to Rodriguez, her contact consisted of the following: (1) filing correspondence related to the Leal case; (2) rescheduling a docket control conference; (3) preparing an order and sending correspondence to counsel concerning a docket control conference; (4) calling Gault's legal assistant regarding the docket control conference; (5) calendaring dates regarding the case on Magallanes' calendar; and (6) making a copy of a birth certificate and social security card in the case at Magallanes' directive on one occasion. When Magallanes learned that Rodriguez had scheduled the docket control conference, he again orally instructed her not to work on the case, and held a meeting where he informed both Rodri-

guez and Castro that they would be dismissed if this happened again.

After this admonition, Rodriguez had continued contact with the file, albeit marginally, filing correspondence for Magallanes and handling Magallanes' calendar. Magallanes also directed Rodriguez to make a copy of a birth certificate and social security card in the Leal case in his presence on one occasion.

When Gault learned that opposing counsel employed Rodriguez, he filed a motion on Valley Regional's behalf to disqualify and recuse Magallanes & Hinojosa as counsel for the Leals. The trial court held an evidentiary hearing at which both Magallanes and Rodriguez testified. After the hearing, the trial court denied Valley Regional's motion to recuse and disqualify Magallanes & Hinojosa, while ordering Rodriguez not to be involved in any of the cases on which she worked while at Brin & Brin. Valley Regional sought mandamus relief in the court of appeals, complaining that the trial court abused its discretion in denying the motion. The court of appeals denied the petition, concluding that Magallanes & Hinojosa "took sufficient precautions to guard against any disclosure of confidences by [Rodriguez]. . . ." 321 S.W.3d 8 (Tex.App.–Corpus Christi–Edinburg 2008).

Valley Regional now petitions this Court for mandamus relief, urging that the trial court abused its discretion in denying the motion and that it has no adequate remedy on appeal.[2] Valley Regional argues that Magallanes & Hinojosa has failed to overcome the rebuttable presumption that confidences were shared, insisting that the informal screening done at the firm was ineffective to ensure Rodriguez did not

---

2. Mandamus is available where a motion to disqualify is inappropriately denied as there is no adequate remedy on appeal. *See NCNB*

*Texas Nat'l Bank v. Coker,* 765 S.W.2d 398, 400 (Tex.1989).

work on the matter. Valley Regional also argues that Rodriguez's actual work on the case at Magallanes & Hinojosa should make the presumption of shared confidences conclusive.

Magallanes & Hinojosa counters that (1) its screening measures were sufficient, and (2) the confidentiality agreement Rodriguez signed before leaving Brin & Brin adds an additional layer of protection against the sharing of confidential information. Magallanes & Hinojosa further suggests that Magallanes' limited participation in the Leal matter, and Rodriguez's minimal work on the case at Magallanes & Hinojosa, renders Rodriguez's actual contact with the Leal file de minimis.

## II

■ An attorney who has previously represented a client may not represent another person in a matter adverse to the former client if the matters are the same or substantially related. *Phoenix Founders, Inc. v. Marshall,* 887 S.W.2d 831, 833 (Tex.1994) (citing *NCNB Texas Nat'l Bank v. Coker,* 765 S.W.2d 398, 399–400 (Tex.1989)); TEX. DISCIPLINARY R. PROF'L CONDUCT 1.09(a), *reprinted in* TEX. GOV'T CODE, tit. 2, subtit. G, app. A, (STATE BAR R. art. X, § 9). If the lawyer works on a matter, there is an irrebuttable presumption that the lawyer obtained confidential information during representation. *Phoenix Founders,* 887 S.W.2d at 833 (citing *Coker,* 765 S.W.2d at 400). When the lawyer moves to another firm and the second firm is representing an opposing party in ongoing litigation, a second irrebuttable presumption arises; it is presumed that the lawyer will share the confidences with members of the second firm, requiring imputed disqualification of the firm. *Phoenix Founders,* 887 S.W.2d at 834 (citing *Petroleum Wholesale, Inc. v. Marshall,* 751 S.W.2d 295, 299 (Tex.App.-Dallas 1988,

orig. proceeding)); TEX. DISCIPLINARY R. PROF'L CONDUCT 1.09(b).

■ A nonlawyer employee who worked on a matter at a prior firm is also subject to an irrebuttable presumption "that confidences and secrets were imparted" to the employee at the firm. *Am. Home,* 985 S.W.2d at 74; *Phoenix Founders,* 887 S.W.2d at 834. The reason this presumption is conclusive is the need "to prevent the moving party from being forced to reveal the very confidences sought to be protected." *Am. Home,* 985 S.W.2d at 74 (quoting *Phoenix Founders,* 887 S.W.2d at 834). However, unlike with attorneys, a nonlawyer is not generally subject to an irrebuttable presumption of having shared confidential information with members of the new firm. *Phoenix Founders,* 887 S.W.2d at 834. Instead, this second presumption can be overcome, but *only* by a showing that: (1) the assistant was instructed not to perform work on any matter on which she worked during her prior employment, or regarding which the assistant has information related to her former employer's representation, and (2) the firm took "other reasonable steps to ensure that the [assistant] does not work in connection with matters on which the [assistant] worked during the prior employment, absent client consent." *Am. Home,* 985 S.W.2d at 75 (quoting *Phoenix Founders,* 887 S.W.2d at 835). Thus, the hiring firm may employ *effective* screening measures to shield the employee from the matter in order to avoid disqualification. *See Grant v. Thirteenth Court of Appeals,* 888 S.W.2d 466, 468 (Tex.1994) (orig. proceeding); *Phoenix Founders,* 887 S.W.2d at 833.

To determine whether the screening used by a firm is effective, we have said that the following factors may be considered: (1) the substantiality of the relationship between the former and current mat-

ters; (2) the time elapsing between the matters; (3) the size of the firm; (4) the number of individuals presumed to have confidential information; (5) the nature of their involvement in the former matter; and (6) the timing and features of any measures taken to reduce the danger of disclosure. *Phoenix Founders*, 887 S.W.2d at 836. Even if the new firm uses a screening process, however, absent consent from the former employer's client:

> disqualification will always be required under some circumstances, such as (1) when information relating to the representation of an adverse client has in fact been disclosed, or (2) when screening would be ineffective or the nonlawyer necessarily would be required to work on the other side of a matter that is the same as or substantially related to a matter on which the nonlawyer has previously worked. *See* ABA Op. 1526 at 3. Ordinarily, however, disqualification is not required as long as "the practical effect of formal screening has been achieved."

*Id.* at 835 (quoting *In re Complex Asbestos Litig.*, 232 Cal.App.3d 572, 283 Cal.Rptr. 732, 746–47 (1991)).

Here, there is no dispute that Magallanes & Hinojosa instructed Rodriguez not to perform work on any matter on which she worked during her former employment, including the Leal case. Thus, Magallanes & Hinojosa satisfied the first prong in our disqualification analysis since it gave this instruction. Instead, the parties dispute whether Magallanes & Hinojosa took "other reasonable steps" to ensure Rodriguez did not work on the Leal case. Because we have not previously determined the types of "reasonable steps" necessary to avoid disqualification, we today take the opportunity to clarify the measures a law firm or lawyer must take to effectively screen a nonlawyer employee from a matter.

### III

Disqualification of a party's counsel is a severe remedy, *see Coker*, 765 S.W.2d at 400, and there are many reasons against granting such a motion liberally, especially when a nonlawyer is the reason behind the motion to disqualify. We have stated that, as compared with lawyers, there is greater concern that the mobility of nonlawyers could be "unduly restricted." *Am. Home*, 985 S.W.2d at 75; *see also Phoenix Founders*, 887 S.W.2d at 835. Other factors also arise, including the ability of a client to have the lawyer of its choice, concerns about the prejudice and economic harm that could result to a client when the disqualification of its counsel is ordered, and concerns about motions to disqualify being abused as a dilatory tactic. *See Leibowitz v. The Eighth Jud. Dist. Ct. of the State of Nev.*, 119 Nev. 523, 78 P.3d 515, 521 (2003); *see also* Erik Wittman, *A Discussion of Nonconsensual Screens as the ABA Votes to Amend Model Rule 1.10*, 22 GEO. J. LEGAL ETHICS 1211, 1218–19 (2009). Further, a nonlawyer employee may not have the same financial interest in the results of a case, nor the same understanding of confidential information as a lawyer. *See* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 123 cmt. f (2000) ("nonlawyers ordinarily understand less about the legal significance of information they learn in a law firm than lawyers do, and they are often not in a position to articulate to a new employer the nature of the information gained in the previous employment. If strict imputation were applied, employers could protect themselves against unanticipated disqualification only by refusing to hire experienced people."). It is because of these concerns that a hiring firm can present evidence to rebut a presumption that the nonlawyer has

shared confidences with members of the firm.

■ But where a serious conflict of interest is present because of a nonlawyer's work on a matter that the nonlawyer previously worked on for opposing counsel, important public policies may balance in favor of disqualification. It is axiomatic that an attorney may not switch sides in the same matter, not only to protect the confidential information of a client but also to protect the integrity of the trial process and judicial system as a whole. Similar concerns about client confidentiality and the integrity of the legal system may arise where a nonlawyer employee is concerned. We have stated that "[t]he test for disqualification is met by demonstrating a genuine *threat* of disclosure, not an actual materialized disclosure." *Grant*, 888 S.W.2d at 467; *see also Am. Home*, 985 S.W.2d at 74. While a nonlawyer employee may not have the same knowledge of confidential information as a lawyer, the employee can certainly understand enough of the confidential materials to present a threat of disclosure at the hiring firm. *See* Jonathan Putnam, *Catering to Our Clients: How In re Cater Exposes the Flaws in Model Rule 5.3—and How They Can Be Solved*, 19 GEO. J. LEGAL ETHICS 925, 925 (2006) (noting that "the drive to offer quality legal representation at competitive costs to clients has led to an explosive growth in the use of nonlawyer employees to perform functions that have traditionally been the responsibility of attorneys"). Moreover, it is certainly understandable that a client would have concerns upon learning that a nonlawyer employee *is* now working for opposing counsel, if the employee previously had access to confidential information in the client's case.

With these principles in mind, we conclude that a simple informal admonition to a nonlawyer employee not to work on a matter on which the employee previously worked for opposing counsel, even if repeated twice and with threat of termination, does not satisfy the "other reasonable measures" a firm must take to properly shield an employee from the litigation. Instead the other reasonable measures must include, at a minimum, formal, institutionalized screening measures that render the possibility of the nonlawyer having contact with the file less likely.

■ This measure is necessary to ensure that the employee is fully and effectively screened from the matter and does not have contact with the forbidden file. If a firm has formal, institutional screening measures in place, all employees of the firm will have greater understanding of the firm's expectations for guarding against conflicts of interest. We have previously suggested the necessity of formal, institutional measures, *see Grant*, 888 S.W.2d at 467–68, but we hold today that a firm must implement such measures to rebut the presumption of shared confidences. When a government attorney moves to a private firm, our rules generally allow the screening of the attorney from cases that might involve a conflict of interest with the attorney's former employment. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.10. The comments to this rule specify that the screening provisions "contemplate that the screened lawyer has not furnished and will not furnish other lawyers with information relating to the matter, will not have access to the files pertaining to the matter, and will not participate in any way as a lawyer or adviser in the matter." *Id.* cmt. 3. We envision that each firm will implement a formal screening process that effectively accomplishes these goals when hiring a nonlawyer as well. If a firm hires a nonlawyer who has previously worked for op-

posing counsel on a matter and then fails to have formal, institutional screening measures in place to shield the nonlawyer from the matter, concerns about the threat of disclosure are unduly high, requiring disqualification. *See Am. Home*, 985 S.W.2d at 74–75; *Grant*, 888 S.W.2d at 467–68.

Despite the screening measures used, if the employee actually works on the case at her employer's directive, as happened here, and the employer reasonably should know about the conflict of interest, then the presumption of shared confidences must become conclusive. The Disciplinary Rules require a lawyer having direct supervision over a nonlawyer to make reasonable efforts to ensure that the assistant's conduct is compatible with the professional obligations of a lawyer. *Phoenix Founders*, 887 S.W.2d at 834; TEX. DISCIPLINARY R. PROF'L CONDUCT 5.03(a). As such, a supervising lawyer may not order, encourage, or permit a nonlawyer to engage in any conduct that, if engaged in by the lawyer, would subject the lawyer to discipline. *Phoenix Founders*, 887 S.W.2d at 834; R. 5.03(b). Thus, if the Disciplinary Rules prohibit a lawyer from revealing confidential information, "they also prohibit a supervising lawyer from ordering, encouraging, or permitting a nonlawyer to reveal such information." *Phoenix Founders*, 887 S.W.2d at 834; R. 1.05(b)(1). We went on to note in *Phoenix Founders* that the Rules do not require disqualification of the new firm, "provided that the supervising lawyer at that firm complies with the Rules so as to ensure that the nonlawyer's conduct is compatible with the professional obligations of a lawyer." *Phoenix Founders*, 887 S.W.2d at 834 (citing Tex. Comm. on Prof'l Ethics, Op. 472, 55 TEX. B.J. 520, 521 (1992)). But we suggested that disqualification is required if the firm and nonlawyer fail to *"strictly adhere"* to an

effective screening process. *Phoenix Founders*, 887 S.W.2d at 834 (citing ABA Comm. on Ethics and Prof'l Responsibility, Informal Op. 1526 (1988)) (emphasis added).

A law firm that directs a nonlawyer employee to work on a forbidden case and that reasonably should know about the conflict of interest is not strictly adhering to a screening process. When this happens, the threat that confidences will be shared becomes unduly high, and disqualification is required. *See Grant*, 888 S.W.2d at 467–68. This holding is in line with our previous opinions. *See Grant*, 888 S.W.2d at 468 (holding that disclosure was required where the current employer permitted the paralegal to work on the same litigation she had worked for at her prior firm, even after becoming aware that she had previously worked on the case); *Am. Home*, 985 S.W.2d at 76 (holding that disqualification was required where lawyer failed to instruct an assistant not to work on a case, nor strictly adhered to an effective screening process).

Similarly, the Restatement of the Law Governing Lawyers notes that "strict imputation" does not apply to nonlawyers who are employed by opposing counsel's firm, but that the lack of imputation is inapplicable in a situation in which a nonlawyer employee is assigned at the new firm to work directly on the same matter on which the employee had worked at a prior firm. RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 123 cmt. f (2000). While in the instant case Rodriguez was not actually "assigned" to work on the Leal matter, she was, on at least one occasion, directly given a task to perform on the matter. We fail to see a meaningful distinction between "assigning" a nonlawyer to a case versus having the nonlawyer perform work on the case with-

out a formal assignment. When a nonlawyer employee is given any work to perform on a forbidden matter, and the employer reasonably should know about the conflict of interest, disqualification is required.

■ In summary, when considering a motion to disqualify on the basis of a firm's employment of a nonlegal employee who previously worked on the same or a substantially related matter for opposing counsel, the trial court must consider whether the hiring firm has rebutted the presumption of shared confidences. To rebut this presumption, the hiring firm must demonstrate that (1) the employee was instructed not to work on any matter which she worked on during her prior employment, or regarding which the employee has information related to her former employer's representation, and (2) the firm took other reasonable steps to ensure that the employee does no work in connection with matters on which the employee worked during the prior employment, absent client consent. These other reasonable steps must include, at a minimum, formal, institutional measures to screen the employee from the case.

■ Despite the screening measures used, the presumption of shared confidences becomes conclusive if: (1) information relating to the representation of an adverse client has in fact been disclosed, (2) screening would be ineffective or the nonlawyer necessarily would be required to work on the other side of a matter that is the same as or substantially related to a matter on which the nonlawyer has previously worked, or (3) the nonlawyer has actually performed work, including clerical work, on the matter at the lawyer's directive if the lawyer reasonably should know about the conflict of interest.

We do not believe these requirements will prove unduly burdensome for lawyers and their employees, even in the case of a small firm or sole practitioner. In the case of a small law office with only one employee, it may be that the lawyer will be required to perform some clerical functions on a matter from which the employee is screened. Yet this is a small burden when balanced against the threat of confidences being revealed and the protection of a client's confidential information. In a small firm like Magallanes & Hinojosa that has more than one assistant, it will be a fairly simple matter to transfer all work on a forbidden case to the other employee and shield the screened employee from the case.

We finally note that these requirements apply only to nonlawyer employees who have access to material information relating to the representation of clients, as well as agents who technically may be independent contractors, such as investigators. *See* ABA Op. 1526.

## IV

■ We agree with Valley Regional that Magallanes & Hinojosa failed to rebut the presumption of shared confidences since: (1) they did not effectively screen Rodriguez from the Leal matter; and (2) even if they had done so, Rodriguez actually worked on the Leal matter at Magallanes' directive when Magallanes knew of Rodriguez's previous work on the Leal matter. Magallanes instructed Rodriguez not to work on the Leal file, but did not take other institutional, formal measures to ensure Rodriguez did not work on the matter. For example, Magallanes & Hinojosa did not remove the file from Rodriguez's access or provide Rodriguez with any written policy about conflicts of interest, relying instead on oral instructions that proved ineffective. Indeed, Rodriguez apparently had ready access to the file and performed work on it even after the admonition.

Finally, Magallanes asked Rodriguez to make copies for the Leal case on one occasion. Making copies is perhaps a simple, clerical matter, yet the message sent not only to Rodriguez but other employees at the firm was that Magallanes & Hinojosa was not serious about guarding against conflicts of interest.

## V

■ Magallanes & Hinojosa also contends that the confidentiality agreement Rodriguez signed on leaving Brin & Brin satisfies the additional reasonable measures needed to ensure confidentiality. We disagree. As we made clear in *Phoenix Founders*, it is incumbent on the hiring attorney to "take other reasonable steps to ensure that the [employee] does not work in connection with matters on which the [employee] worked during the prior employment, absent client consent." 887 S.W.2d at 835. Because the confidentiality agreement was not a step taken by the hiring attorney, it is not relevant to the disqualification analysis. *See id.* ("client confidences may be adequately safeguarded if a firm hiring a paralegal from another firm takes appropriate steps in compliance with the Disciplinary Rules"). We refuse to shift the screening responsibility to the former client or its counsel. Instead, it is the responsibility of the hiring firm to take effective, formal, institutional measures to shield the employee from the litigation.

\*      \*      \*

Because the trial court abused its discretion in refusing to disqualify Magallanes & Hinojosa, we conditionally grant mandamus relief and direct the trial court to grant Valley Regional's motion to disqualify and recuse Magallanes & Hinojosa from the Leal matter. We are confident the court will comply, and the writ will issue only if it does not.