**IN RE: Wendell REEDER, Relator**

NO. 12–15–00206–CV

Court of Appeals of Texas, Tyler.

Opinion delivered February 3, 2016

Marisa Schouten, for Relator.

Judge G. Timothy Boswell, for Respondent.

J. Bennett White, for Real Party in Interest.

Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.

## OPINION

GREG NEELEY, Justice

Wendell Reeder requests a writ of mandamus directing the trial court to vacate its July 14, 2015 order disqualifying J. Keith Mayo and Mayo Mendolia & Vice, L.L.P. from representing him in the underlying proceeding.[1] We conditionally grant the writ.

### BACKGROUND

On April 14, 2015, J. Bennett White P.C. (White P.C.), sued Reeder for unpaid attorney's fees. J. Bennett White (White) represents White P.C. in the suit. The same day, Reeder retained J. Keith Mayo (Mayo) with the law firm of Mayo Mendolia & Vice, L.L.P. (Mayo L.L.P.) to represent him individually and in a number of other business and litigation-related matters. Mayo represents Reeder in White P.C.'s suit.

On the date the suit was filed, Jennifer Smith had been working as a legal assistant for White P.C. for approximately three years. She had previously worked as a legal assistant for Mayo L.L.P. Sometime before Reeder retained Mayo, Smith spoke to Mayo about returning to work there. She was rehired on April 16, 2015–two days after Reeder retained Mayo.

White P.C. filed a motion to disqualify Mayo and Mayo L.L.P. on two grounds: (1) Smith's possession of confidential information pertaining to White P.C.'s suit against Reeder and (2) the possibility that Smith could be called as a fact witness. Reeder filed a written response, which included Mayo's affidavit explaining the screening policies and procedures he implemented to protect White P.C.'s confidential information.

Following a hearing, the trial court granted White P.C.'s motion to disqualify. The written order states the trial court's determination "that a conflict exists sufficient to disqualify J. Keith Mayo and Mayo Mendolia & Vice, L.L.P. as attorneys for Defendant Wendell Reeder." Reeder filed this original proceeding and a motion for temporary relief. We granted the motion and stayed the proceedings in the trial court until further order of this Court.

### PREREQUISITES TO MANDAMUS

Generally, mandamus is appropriate only when the trial court clearly abused its discretion and the relator has no adequate remedy by appeal. *See In re Reece*, 341 S.W.3d 360, 364 (Tex.2011) (orig.proceeding). However, there is no adequate remedy on appeal when a trial court erroneously grants an order disqualifying counsel. *In re Sanders*, 153 S.W.3d 54, 56 (Tex.2004) (orig.proceeding). Therefore, to be entitled to mandamus relief, the relator must show only that the trial court abused its discretion. *See id.*

A trial court has no discretion in determining what the law is or applying the law to the facts. *In re EPIC Holdings, Inc.*, 985 S.W.2d 41, 57 (Tex.1998) (orig.proceeding). Thus, a trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law or clearly fails to correctly analyze or apply the law. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex.2005) (orig.proceeding). With respect to resolution of factual issues or matters committed to the trial court's discretion, the relator must establish that the trial court could reasonably

---

1. The underlying proceeding is trial court cause number 2015–184, styled *J. Bennett White, P.C. v. Wendell Reeder*. The respondent is the Honorable Timothy Boswell, presiding judge of the 402nd Judicial District Court, Wood County, Texas.

have reached only one decision. *EPIC Holdings,* 985 S.W.2d at 56; *Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex.1992) (orig.proceeding).

### DISQUALIFICATION OF COUNSEL GENERALLY

■ Disqualification of a party's attorney can cause immediate harm by depriving the party of its chosen counsel and by disrupting court proceedings. *In re Nitla S.A. de C.V.,* 92 S.W.3d 419, 422 (Tex.2002) (orig.proceeding). Thus, "[d]isqualification of a party's counsel is a severe remedy[.]" *In re Columbia Valley Healthcare Sys., L.P.,* 320 S.W.3d 819, 825 (Tex.2010) (orig.proceeding). For that reason, the trial court, "[i]n considering a motion to disqualify, ... must strictly adhere to an exacting standard to discourage a party from using the motion as a dilatory trial tactic." *See Nitla,* 92 S.W.3d at 422.

■ The movant bears the burden of proving that a party's attorney should be disqualified. *In re Meador,* 968 S.W.2d 346, 350 (Tex.1998) (orig.proceeding). Mere allegations of unethical conduct or evidence showing a remote possibility of a violation of the disciplinary rules will not suffice under the "exacting standard" required to grant a motion to disqualify. *Spears v. Fourth Court of Appeals,* 797 S.W.2d 654, 656 (Tex.1990) (orig.proceeding).

■ For "many reasons," motions to disqualify should not be granted liberally. *See Columbia Valley,* 320 S.W.3d at 825. This is especially true when a nonlawyer is the reason for the motion because there is a greater concern that the mobility of nonlawyers could be unduly restricted. *Id.* Other relevant factors include the ability of a client to have the attorney of his choice, concerns about the prejudice and economic harm that could result to a client when the disqualification of its counsel is ordered, and concerns about motions to

disqualify being used as a dilatory tactic. *Id.*

### DISQUALIFICATION—SMITH'S CONFIDENTIAL INFORMATION

Reeder first argues that White P.C. did not meet its burden to show that disqualification is required to protect White P.C.'s confidential information.

### *Disciplinary Rule 1.09*

■ Without prior consent, an attorney who has formerly represented a client in a matter may not represent another person in a matter adverse to the former client if the matters are the same or substantially related. TEX. DISCIPLINARY R. PROF'L CONDUCT 1.09(a)(3), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (West 2013) (TEX. STATE BAR R. art. X, § 9); *Columbia Valley,* 320 S.W.3d at 824. If the attorney works on a matter, an irrebuttable presumption arises that the attorney obtained confidential information during the representation. *Columbia Valley,* 320 S.W.3d at 824. When the attorney moves to another firm and the second firm is representing an opposing party in the same ongoing matter, a second irrebuttable presumption arises—that the attorney has shared the client's confidences with members of the second firm. *In re Guaranty Ins. Servs., Inc.,* 343 S.W.3d 130, 134 (Tex.2011) (orig.proceeding). The effect of this presumption is the mandatory disqualification of the second firm. *Id.*; *see* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.09(b) (providing that no attorney in a firm may knowingly represent a client if any one of them practicing alone would be prohibited from doing so by Rule 1.09(a)).

■ A nonlawyer employee who worked on a matter at a prior firm also is subject to a conclusive presumption that confidences were obtained. *Guaranty Ins.,* 343 S.W.3d at 134. This rule pre-

vents the moving party "from being forced to reveal the very confidences sought to be protected." *In re Am. Home Prods. Corp.*, 985 S.W.2d 68, 74 (Tex.1998) (orig.proceeding). But, unlike an attorney, a nonlawyer employee may rebut the second presumption–that confidences were shared with members of the second firm. *Guaranty Ins.*, 343 S.W.3d at 134; *Columbia Valley*, 320 S.W.3d at 824.

■ To rebut this second presumption, the party opposing disqualification must show that "(1) the [nonlawyer] was instructed not to perform work on any matter on which she worked during her prior employment, or regarding which the [nonlawyer] has information related to her former employer's representation, and (2) the firm took 'other reasonable [measures] to ensure that the [nonlawyer] does not work in connection with matters on which the [nonlawyer] worked during the prior employment, absent client consent.'" *Columbia Valley*, 320 S.W.3d at 824 (quoting *Am. Home*, 985 S.W.2d at 75); *see also Guaranty Ins.*, 343 S.W.3d at 134. Other reasonable measures must include, at a minimum, formal, institutionalized screening measures that render the possibility of the nonlawyer's having contact with the file less likely. *Columbia Valley*, 320 S.W.3d at 826.

■ Absent consent of the former employer's client, disqualification will always be required under some circumstances, such as (1) when information relating to the representation of an adverse client has in fact been disclosed, (2) when screening would be ineffective, or (3) when the nonlawyer necessarily would be required to work on the other side of a matter that is the same as a matter on which the nonlawyer has previously worked. *Phoenix Founders, Inc. v. Marshall*, 887 S.W.2d 831, 835 (Tex.1994) (orig.proceeding).

■ In most cases, disqualification is not required as long as the practical effect of formal screening—effective screening—has been achieved. *Guaranty Ins.*, 343 S.W.3d at 134; *Columbia Valley*, 320 S.W.3d at 824. The factors to be considered in determining whether effective screening has occurred generally include (1) the substantiality of the relationship between the former and current matters; (2) the time elapsing between the matters; (3) the size of the firm; (4) the number of individuals presumed to have confidential information; (5) the nature of their involvement in the former matter; and (6) the timing and features of any measures taken to reduce the danger of disclosure. *Columbia Valley*, 320 S.W.3d at 824–25; *Phoenix Founders*, 887 S.W.2d at 836.

■ Whether screening actually works is not determinative. *Guaranty Ins.*, 343 S.W.3d at 135. The ultimate question in weighing these factors is whether the second firm has taken measures sufficient to reduce the potential for misuse of confidences to an acceptable level. *Id.*

### *The First Presumption*

■ Reeder asserts that White P.C. provided no evidence to support its motion to disqualify and, in particular, its assertion that Smith worked on the underlying suit against Reeder. Therefore, he contends, the presumption that Smith acquired confidential information pertaining to the underlying suit did not arise. Implicit in Reeder's argument is that the unsworn statements of White P.C.'s attorney were not evidence.

The record reflects that, at the hearing, White P.C. did not call any witnesses or formally introduce other evidence to support its motion. However, White informed the trial court that "when Ms. Smith was working for my firm, there is some portion of the work that's been sued on here today

in this lawsuit that was work she provided." He explained further that

> the matter we are here [on] today is the very same matter that she helped work on right before she left[,] which was accounting for Mr. Reeder's time, reconciling the billing, making sure the amount we were claiming against him was correctly calculated, and so she's got direct involvement in the matter that Mr. Mayo is representing Mr. Reeder on.

■ Normally, an attorney's statements must be made under oath to constitute evidence. *Banda v. Garcia,* 955 S.W.2d 270, 272 (Tex.1997). But the opponent of the testimony can waive the oath requirement by failing to object when the opponent knows or should know that an objection is necessary. *See id.*

White did not take an oath at the hearing. However, the record shows that, by his statements, White was attempting to invoke the presumption that Smith possessed confidential information about the underlying suit. Thus, Mayo either knew or should have known to object to White's unsworn statements but did not do so.[2] As a result, the oath requirement was waived, and the trial court could consider White's unsworn statements as evidence. *See, e.g., Mathis v. Lockwood,* 166 S.W.3d 743, 745 (Tex.2005) (objection necessary where record clearly indicates unsworn statements of attorneys were tendered as

evidence at hearing on motion for new trial); *Banda,* 955 S.W.2d at 272 (attorney's unsworn statements regarding existence of agreement constituted evidence absent objection). Those unsworn statements were sufficient to invoke the presumption that Smith possessed confidential information about the underlying suit. Consequently, to avoid disqualification of Mayo and Mayo L.L.P., Reeder was required to rebut the second presumption—that Smith shared the information with the members of Mayo L.L.P.

### *The Second Presumption and the Trial Court's Ruling*

■ Mayo informed the trial court that he believed Mayo L.L.P. had "met the criteria for isolating this particular nonlawyer/paralegal in the manner prescribed by the law." He specifically referred to the *Phoenix* factors and described some of the measures he had taken to comply with *Phoenix.* These statements were unsworn, but White P.C. did not object. Therefore, the oath requirement was waived as to Mayo, and the trial court could consider Mayo's unsworn testimony as evidence. *See, e.g., Mathis,* 166 S.W.3d at 745; *Banda,* 955 S.W.2d at 272.

Mayo also called the court's attention to his affidavit, which was attached to Reeder's response to the motion to disqualify and was in the court's file at the time of the hearing.[3] In his affidavit, Mayo described in more detail the measures taken

---

**2.** In his response to White P.C.'s motion to disqualify, Reeder stated that "[n]either party disputes the fact that Ms. Smith worked directly on this case. In fact, Ms. Smith was one of three legal assistants employed by [White P.C.] with access to confidential information about this case." This concession likely explains Mayo's failure to object.

**3.** in the hearing, the trial judge assured Mayo that he would consider everything in the affidavit to be correct "and you've taken all those steps and [are] acting in good faith." Al-

though the affidavit was not introduced into evidence, the trial court's comments show that it considered the affidavit as evidence. *See Lefton v. Griffith,* 136 S.W.3d 271, 275–76 (Tex.App.–San Antonio 2004, no pet.) (holding affidavit not admitted into evidence could be considered in reviewing evidentiary sufficiency on appeal because of trial court's "clear" comments showing that it considered affidavit in rendering default judgment). Therefore, we will consider it in our review.

to protect White P.C.'s confidential information.

In response, White P.C. focused on the *Phoenix* factors, arguing that each weighed in favor of disqualification. Thus, White P.C. urged in substance that effective screening could not be achieved in this case. *See Phoenix*, 887 S.W.2d at 835. White P.C. asserted further that, even with the best of intentions, Mayo L.L.P. is too small to avoid an emergency in which Smith would be required to work on White P.C.'s suit against Reeder. By these arguments, White P.C. invoked two of the three circumstances identified in *Phoenix* that will always require disqualification. *See id.*

### Application of Phoenix

In this proceeding, White P.C. challenges the "other reasonable measures" requirement for effective screening. *See Columbia Valley*, 320 S.W.3d at 824. More specifically, it asserts that screening cannot be effective in this case. *See, e.g., Phoenix*, 887 S.W.2d at 835. According to White P.C., each *Phoenix* factor weighs in favor of disqualification, and therefore the trial court reasonably could have concluded that disqualification is required.

■ **1. Substantiality of relationship between the former and current matters.** As White P.C. points out, the two matters are the same. Smith, who worked for White P.C. when it filed the suit, now works for Mayo L.L.P., who represents Reeder. The danger of improper disclosure of confidential information increases when a nonlawyer employee moves from one firm to another who represents the opposing party in the same litigation. *See Phoenix*, 887 S.W.2d at 836. Therefore, this factor weighs in favor of disqualification. But evidence regarding the other factors may tend to rebut the presumption of shared confidences. *See id.*

**2. Time elapsing between the matters.** Smith's employment by White P.C. immediately preceded her return to Mayo L.L.P. As White expressed at the hearing, "there's no gap in between the two." But Mayo stated in his affidavit that, "[p]rior to the retention of Mr. Reeder as a client, there were other cases in which both the law office of [Mayo L.L.P.] and [White P.C.] were involved. Therefore, when Ms. Smith was re-hired by [Mayo L.L.P.], the undersigned counsel had already contemplated the segregation of Ms. Smith from these files as a matter of precaution."

**3. Size of the firm.** Mayo L.L.P. is a small firm and employs only "three or four" legal assistants. However, Mayo stated in his affidavit that all files in which White P.C. was "involved in any capacity" have been assigned to another legal assistant. *See Columbia Valley*, 320 S.W.3d at 828 ("In a small firm . . . that has more than one assistant, it will be a fairly simple matter to transfer all work on a forbidden case to the other employee and shield the screened employee from the case.").

Moreover, Mayo stated in his affidavit that, in implementing the screening measures, he instructed Smith and all other Mayo L.L.P. personnel that Smith was not to discuss White P.C. files with any of them, "even in casual conversation." His reference to "casual conversation" serves as a warning against any lack of formality that might lead to improper disclosure. *See Rubin v. Enns*, 23 S.W.3d 382, 385 (Tex.App.–Amarillo 2000, orig. proceeding [mandamus denied] ) (anticipating possibility of disclosure in more intimate atmosphere of smaller group).

**4. Number of individuals presumed to have confidential information.** Only Smith is presumed to have confidential information.

**5. Nature of involvement in the former matter.** While working at White

P.C., Smith's responsibilities in the underlying suit included accounting for Reeder's time, reconciling the billing, and making sure the amount White P.C. was claiming was correctly calculated. Although some of these tasks may have been more clerical than legal, they nevertheless provided Smith access to confidential information.

**6. Timing and features of screening measures.** Mayo related in his affidavit that, at the time of Smith's rehiring, the following steps were taken to protect the confidential information Smith possessed:

1. All cases in which Mayo L.L.P. was involved in any capacity with White P.C.'s office were disclosed to Smith.
2. Mayo instructed Smith and all other firm personnel that Smith was not to "field" any calls associated with the disclosed case files, access those files through the firm server or by viewing the hard files, or discuss those files, "even in casual conversation," with any firm employee or partner until further notice from Mayo.
3. All disclosed case files were assigned to another legal assistant in the office and all hard files were placed in another office that was segregated from Smith's office.

### Conclusion

In changing employers, Smith "switched sides" in the same lawsuit, which increases the danger of improper disclosure of confidential information. She is presumed to have obtained confidential information by working on the case, and her direct involvement in the case confirms that she had access to confidential information. These factors weigh in favor of disqualification.

No time elapsed between Smith's employment with White P.C. and her rehiring by Mayo L.L.P. However, Mayo's affidavit shows there was no time lapse between her rehiring and the implementation of screening measures. Before Smith was rehired, Mayo was aware that screening would be necessary. And immediately upon Smith's rehiring, screening measures were implemented to prohibit Smith from having access to any files in which White P.C. is involved in any capacity, performing any task relating to any of those files, and participating in discussions about any of those files. The "discussions" prohibition expressly extends to casual conversation. All White P.C. files have been assigned to another legal assistant. And Smith is the only person presumed to have confidential information, which facilitates the effectiveness of screening, particularly in a small firm such as Mayo L.L.P.

On balance, the evidence pertaining to the *Phoenix* factors, which is uncontroverted, conclusively shows Mayo implemented screening measures that "render[ed] the possibility of [Smith's] having contact with [Reeder's] file less likely." *See Columbia Valley,* 320 S.W.3d at 826. Consequently, the "measures [are] sufficient to reduce the potential for misuse of confidences to an acceptable level." *See, e.g., Guaranty Ins.,* 343 S.W.3d at 135. Thus, Reeder has rebutted the presumption of shared confidences. *See id.* The trial court could not reasonably have concluded that Mayo and Mayo L.L.P. should be disqualified under Rule 1.09.

### DISQUALIFICATION-SMITH AS FACT WITNESS

Reeder contends further that the trial court abused its discretion in granting White P.C.'s motion to disqualify on the ground that Smith is a fact witness in the underlying lawsuit.

### Disciplinary Rule 3.08

Subject to exceptions that are not relevant here, Rule 3.08(a) prohibits an attorney from accepting or continuing employ-

ment as an advocate before a tribunal if he knows or believes he may be called to testify regarding an essential fact of his client's case. TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08(a). Rule 3.08(b) prohibits a lawyer from continuing as an advocate in a pending adjudicatory proceeding if the attorney believes he will be compelled to testify in a manner "that will be substantially adverse to the [attorney's] client." TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08(b); *In re Slusser*, 136 S.W.3d 245, 248 (Tex.App.–San Antonio 2004, orig. proceeding).

To support disqualification under Rule 3.08(a), the movant must present evidence that the attorney's testimony is "necessary" and goes to an "essential fact" of the nonmovant's case. *In re Chu*, 134 S.W.3d 459, 464 (Tex.App.–Waco 2004, orig. proceeding). Under Rule 3.08(b), the movant must show that the testimony of the attorney is "required" for the movant's case and that the testimony will be "substantially adverse" to the testifying attorney's client. *Slusser*, 136 S.W.3d at 248.

Rule 3.08 should not be used as a tactical weapon to deprive the opposing party of the right to be represented by the attorney of his choice because such a use would subvert the rule's purpose. TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08 cmt. 10. To prevent such misuse, a movant seeking disqualification under subsection (a) or (b) also must demonstrate that the attorney's continued representation of his client will cause the movant actual prejudice. *See Sanders*, 153 S.W.3d at 57 (requiring showing of actual prejudice when disqualification is sought under Rule 3.08(a)); *In re Bivins*, 162 S.W.3d 415, 421 (Tex.App.–Waco 2005, orig. proceeding)

(holding that disqualification under either (a) and (b) requires movant to show actual prejudice). "Actual" in the legal context means "existing in fact; real." BLACK'S LAW DICTIONARY 38 (8th ed.2004).

Rule 3.08 should rarely be the basis for disqualification. *Chu*, 134 S.W.3d at 464; *May v. Crofts*, 868 S.W.2d 397, 399 (Tex.App.–Texarkana 1993, orig. proceeding); *see also* TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08 cmt. 9 ("Rule 3.08 sets out a disciplinary standard and is not well suited to use as a standard for procedural disqualification."). But disqualification of an attorney under either subsection (a) or (b) does not extend to other members of the firm if the client consents after full disclosure. TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08(c).

### White P.C.'s Burden

Reeder asserts that Smith is a nonlawyer employee and thus Rule 3.08 does not apply to her. Alternatively, Reeder argues that White P.C. failed to present the evidence required for disqualification. White P.C. has provided no argument or authority to support its conclusion that Rule 3.08 applies to nonlawyer employees.[4] And nothing in the plain language of the rule indicates that it does. *See generally* TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08. But even if we assume that Rule 3.08 applies to nonlawyer employees, we cannot conclude that White P.C. showed disqualification is required under Rule 3.08(a) or (b).

At the disqualification hearing, White informed the trial court that "when Ms. Smith was working for my firm, there is some portion of the work that's been sued on here today in this lawsuit that was work

---

4. In this proceeding, White P.C. has not responded to any of Reeder's arguments relat-
ing to Rule 3.08.

that she provided, so she's a fact witness about work she did that is reflected in the billing." White stated further that Smith worked on the underlying lawsuit "right before she left," and that the work she did was "reconciling the billing, making sure the amount we were claiming against him was correctly calculated...." In concluding his argument, White stated that

> the problem we have right now, Your Honor, she is a fact witness. She has knowledge that bears upon the legitimacy of our claim against Mr. Mayo's client. Mr. Mayo is obligated to zealously defend his client and there's no way for him to zealously defend his client if he's taking a hands-off approach with a fact witness because she happens to work for him.

Although the types of tasks Smith performed may be relevant to the issues in the underlying lawsuit, White P.C. did not produce evidence of any fact that is "essential" to Reeder's defense or evidence showing why Smith's testimony is "required" to establish any such fact. Moreover, White P.C. did not show why Smith's testimony is "required" for White P.C.'s case or how any testimony from Smith will be "substantially adverse" to Reeder. And finally, White P.C. has not shown that it will suffer "actual prejudice" if Mayo continues to represent Reeder.

White P.C. did not establish that Mayo and Mayo L.L.P were disqualified under Rule 3.08(a) or (b). Therefore, the trial court could not reasonably have concluded that disqualification is required under either subsection.

#### CONCLUSION

White P.C. did not show that Mayo and Mayo L.L.P should be disqualified under Rule 1.09 or under Rule 3.08, subsection (a) or (b). Accordingly, we hold that the trial court abused its discretion in granting White P.C.'s motion to disqualify.

Because the trial court abused its discretion in granting White P.C.'s motion to disqualify, we *conditionally grant* Reeder's petition for writ for mandamus. We trust the trial court will promptly vacate its order of July 14, 2015, granting White P.C.'s motion to disqualify and issue an order denying the motion. The writ will issue only if the trial court fails to comply with this opinion and the corresponding order *within ten days.* The trial court shall furnish this Court, *within the time for compliance with its opinion and order,* a certified copy of the order evidencing such compliance. Our August 21, 2015 stay is *lifted.*

#### ORDER

ON THIS DAY came to be heard the petition for writ of mandamus filed by **WENDELL REEDER,** who is the defendant in Cause No. 2015–184, pending on the docket of the 402nd Judicial District Court of Wood County, Texas. Said petition for writ of mandamus having been filed herein on August 20, 2015, and the same having been duly considered, because it is the opinion of this Court that the petition for writ of mandamus is meritorious, it is therefore CONSIDERED, ADJUDGED and ORDERED that the said petition for writ of mandamus be, and the same is, hereby **conditionally granted.**

And because it is further the opinion of this Court that the trial judge will act promptly and vacate his order of July 14, 2015, granting White P.C.'s motion to disqualify and issue an order denying the motion, the writ will not issue unless the Honorable G. Timothy Boswell, Judge of the 402nd Judicial District Court of Wood County, Texas, fails to comply with this

Court's order *within ten (10) days* from the date of this order.