# NO. 12-19-00354-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN RE: MARYE JEANNINE JONES,* | *§* | |
| *MARYE GENEVA WATTS, JEFFREY* | | |
| *SAMMONS AND DR. KIMBERLY* | *§* | *ORIGINAL PROCEEDING* |
| *GREER,* | | |
| *RELATORS* | *§* | |

## *MEMORANDUM OPINION*

Relators Marye Jeannine Jones (Marye), Marye Geneva Watts (Watts), Jeffrey Sammons (Sammons), and Dr. Kimberly Greer (Greer) filed this original proceeding to challenge Respondent's disqualification of Relators' counsel and denial of a motion for issuance of a show cause order.[1] We conditionally grant the writ, in part.

## BACKGROUND

Real Party in Interest Carolyn Cogburn (Cogburn) is executor of the Estate of Delores Jones (the Estate). Marye and Delores's son, Matthew, resided at the "Wellington residence" at the time of Matthew's death in 2007. According to Marye, Matthew bequeathed all of his property to Marye, although the will was never probated. Marye continued living at the residence until Delores died in 2017. Marye's daughter, Watts, also lived at the residence. In January 2018, Marye filed a claim against Delores's estate. She eventually reached a Rule 11 agreement with Cogburn,[2] in which she agreed to turn over keys to the residence

---

[1] Respondent is the Honorable Campbell Cox, II, Judge of the 145th District Court in Nacogdoches County, Texas. The record is not entirely clear as to the roles of Greer and Sammons in the litigation, other than each is named as a relator and each is a party in the proceedings below.

[2] The Estate filed a separate proceeding against Marye and Watts for damage to the residence. Only Cogburn, as executor, Marye, and Watts are named as parties in that proceeding

On April 5, 2019, Relators' counsel requested a copy of the annual accounting. On June 7, Marye filed a motion for issuance of show cause order under the estates code, in which she stated that she filed a claim against the Estate in January 2018, is an interested person in the estate, requested an accounting, and no accounting was provided. In July, Marye filed a third amended petition, alleging that (1) she and Matthew had a long term relationship and married in June 2007, (2) she and Matthew both brought their belongings into the Wellington residence, acquired property while residing there, received gifts from Delores while residing there, and made repairs to the property, (3) Matthew left a will bequeathing all his property to Marye, (4) Cogburn filed a purported will that disposes of the residence's contents and made representations contrary to those Delores made while alive, (5) Cogburn forced Marye from the property via eviction proceedings, and (6) Cogburn committed wrongful acts as the Estate's representative. She sought a declaration of her rights to the property and alleged conversion, abuse of process, unjust enrichment/quantum meruit, trespass to property, illegal lockout, and promissory estoppel. On August 9, Respondent found that Marye is not an interested person for purposes of obtaining an accounting and denied the motion for issuance of a show cause order.

On September 20, the Estate filed a motion for sanctions against Relators and requested disqualification of Relators' counsel, Scott D. Reiner. The motion alleged that attorney Paul Anderson represented the Estate, Cogburn, and Cogburn's brother, Steven Jones (Steven) and that on September 11, Reiner emailed Steven despite knowing that Anderson represented Steven, in violation of the Texas Disciplinary Rules of Professional Conduct. The email states the following:

Mr. Jones,

It is an elementary concept that claims between parties must be litigated in the same suit. Mr. Anderson's refusal to distinguish these damages from the ones alleged in the prior petitions is highly suspect, and I believe the Court would view it as such.

I know Mr. Anderson has selectively shared communications with you in his efforts to perpetuate bad impressions of me. I believe there is much he has not shared with you. This is unfortunate.

For example, I have learned that he failed to gain admission to law school something like the first six times he applied. His admission was gained due to a recommendation from attorneys here in Houston that he worked for, and they refuse to associate with him anymore. His actions necessitated a contempt motion against him in a prior case, which the relevant material is attached. He has taken similar actions in this case.

I only send this because I believe we each share the interest of resolving this. As you are not a party but are indirectly impacted by the amount left for you (eg. inheritence [sic] only what remains after payment of claims) you have a unique position. At this point, this case is facing an extension of months and additional expenses in thousands of dollars - at the deposition the Estate claimed it

2

already paid $100,000 in legal fees (most of which has probably gone to Mr. Anderson). And that was back in April I think.

I don't expect a response but I do hope you consider my thoughts here and offer and/or take whatever actions you believe would expedite resolution (if you feel that such would be appropriate or in the best interest).

Sincerely,

Scott Reiner

Respondent set the motion for a hearing to be held on September 24.

At the hearing, Steven testified that he is an heir of the Estate and is represented by Anderson, although the two have no written agreement or written waiver of conflict. He understood the potential for conflict with Anderson representing both Steven and Cogburn, but explained that his interests are aligned with those of Cogburn, there is no dissension between them, and they share a common goal of resolving the lawsuit. He testified to receiving Reiner's email on September 11 and he described the email as "very inappropriate," a "blatant attempt to cast doubt in my mind as to [Anderson's] abilities to represent me and the estate as an attorney," a "method of stirring the pot," and an "attempt to sew dissension." On September 12, he responded to Reiner's email and stated that he is an heir of the Estate and is represented by Anderson, and instructed Reiner not to contact him. Steven also filed a grievance with the State Bar of Texas against Reiner. Steven subsequently received a text message from Sammons inquiring if he could call Steven.[3] During the call, Sammons repeated some of the statements made in Reiner's email. Steven acknowledged that before September 12, he never had a conversation with Reiner in which he disclosed being represented by Anderson. At the conclusion of the hearing, Respondent held that Reiner is disqualified. In doing so, Respondent made the following pertinent statements:

Mr. Jones is the brother of Mrs. Cogburn. They are brother and sister. They have been arm and arm throughout this entire litigation. They have been here -- he has been here. She has been here.

It has been clear to not only me but to them, their attorney, and to you, Mr. Reiner, that they are the heirs of the estate. Because of that they are the beneficiaries of the estate. It is clear that estates are set up to benefit the heirs. For that reason, I do find that they are represented by Mr. Anderson. He has, in fact, advised them and served as counsel to them and has sought their best interests, both of them, Mr. Jones and Mrs. Cogburn as well.

---

[3] The record does not demonstrate that Sammons contacted Steven as the result of any prompting by Reiner.

3

And for that reason I do find that there is an attorney-client relationship with Mr. Anderson as well as Mr. Jones and Ms. Cogburn. And I do find that, although we refer to it as a representation of the estate, they are the beneficiaries and they are, in fact, the estate…

…I do find that…the e-mail from Scott Reiner on September the 11th of this year to Steven Jones was a communication pertaining to the subject of the representation and that Mr. Reiner knows that Mr. Jones is [] represented by Mr. Anderson due to the fact he's been here, he has sat with his sister, he has talked to Mr. Anderson, and Mr. Anderson has given him advice within eyesight -- within a mere 8 feet of you, Mr. Reiner. So I find that you did know that Mr. Jones was represented by Mr. Anderson.[4]

On September 26, Respondent signed an order disqualifying Reiner. Respondent found that Steven was represented by Anderson and that Reiner's contact with Steven violated disciplinary Rule 4.02. Respondent made the following fact findings: (1) Reiner was aware at all times that Steven was a party represented by counsel, (2) although Anderson represents the Estate, he also represents Steven, (3) Cogburn and Steven, who are siblings and beneficiaries, attended multiple hearings with Anderson, sat at counsel table with Anderson, are "lock step with one another as to defending the estate," have been called as witnesses, and have instructed Anderson in front of Reiner, (4) Reiner saw and heard Anderson talk with and advise both Steven and Cogburn, saw Anderson counsel Steven, and saw Steven instruct Anderson on how to proceed, which Respondent described as the "essence of the attorney-client relationship," (5) a "sacrosanct attorney-client relationship" existed between Anderson and Steven at the time of the contact, (6) the email was not a mistake, accidental, coincidental, or unintentional, but was an "intentional attempt to interfere and sow dissent in the attorney-client relationship" between Anderson and Cogburn and between Anderson and Steven, and (7) the Estate, Cogburn, and Steven suffered actual prejudice, harm, and injury because of Reiner's conduct and Reiner's continued presence would taint the proceedings. In his conclusions of law, Respondent found that Reiner knowingly and intentionally contacted a party represented by counsel for purposes of dishonesty, fraud, deceit, or misrepresentation in violation of Rule 4.02 and that such conduct created actual prejudice and tainted the proceedings. Respondent abated the case for sixty days or until the appearance of new counsel for Relators. This proceeding followed.

---

[4] "A lawyer owes to opposing counsel, in the conduct of legal transactions and the pursuit of litigation, courtesy, candor, cooperation, and scrupulous observance of all agreements and mutual understandings." *Texas Lawyer's Creed–A Mandate for Professionalism*, *reprinted in* TEXAS RULES OF COURT 763, 764 (West 2019). In the present case, however, the record indicates that animosity exists between Anderson and Reiner, on the part of both attorneys.

Mandamus is an extraordinary remedy. *In re Sw. Bell Tel. Co., L.P.*, 235 S.W.3d 619, 623 (Tex. 2007) (orig. proceeding). Generally, a writ of mandamus will issue only when the relator has no adequate remedy by appeal and the trial court committed a clear abuse of discretion. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding).

## DISQUALIFICATION OF COUNSEL

Relators argue that Respondent abused his discretion by disqualifying counsel because (1) the hearing on the motion to disqualify was held without first affording sufficient notice, (2) the evidence fails to establish the prior knowledge required for a violation of disciplinary Rule 4.02 or the existence of an attorney-client relationship between Steven and Anderson, (3) the Estate failed to demonstrate prejudice, (4) Respondent erroneously applied disciplinary Rule 4.02, instead of Rule 4.03 regarding "dealing with an unrepresented person," and (5) Respondent's findings are not supported by the evidence.

**Standard of Review and Applicable Law**

A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law. *Cerberus Capital*, 164 S.W.3d at 382. This standard has different applications in different circumstances. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). When reviewing the trial court's resolution of factual issues or matters committed to its discretion, we may not substitute our judgment for that of the trial court. *Id*. Thus, we cannot set aside the trial court's finding unless it is clear from the record that the trial court could have reached only one decision. *In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 422 (Tex. 2002) (orig. proceeding). Our review of the trial court's determination of the legal principles controlling its ruling is much less deferential. *Walker*, 827 S.W.2d at 849. This is because a trial court has no discretion in determining what the law is or applying the law to the facts. *Id*.

"Disqualification of counsel is a severe remedy." *Spears v. Fourth Court of Appeals*, 797 S.W.2d 654, 656 (Tex. 1990) (orig. proceeding). Motions to disqualify should not be granted liberally. *In re Columbia Valley Healthcare Sys., L.P.*, 320 S.W.3d 819, 825 (Tex. 2010) (orig. proceeding). Disqualification can result in immediate and palpable harm, disrupt trial court proceedings, and deprive a party of the right to have its counsel of choice. *Nitla*, 92 S.W.3d at

422. "While the disciplinary rules are not controlling as standards governing motions to disqualify, they have been viewed by the courts as guidelines that articulate considerations relevant to the merits of such motions." *Spears*, 797 S.W.2d at 656. Technical compliance with ethical rules might not foreclose disqualification, and conversely a violation of ethical rules might not require disqualification. *In re Users Sys. Servs., Inc.*, 22 S.W.3d 331, 334 (Tex. 1999) (orig. proceeding). In considering a motion to disqualify, the trial court must strictly adhere to an exacting standard to discourage a party from using the motion as a dilatory trial tactic. *Nitla*, 92 S.W.3d at 422. The burden is on the movant to establish with specificity a violation of one or more of the disciplinary rules. *Spears*, 797 S.W.2d at 656. Mere allegations of unethical conduct or evidence showing a remote possibility of a violation of the disciplinary rules will not suffice to merit disqualification. *Id*.

There is no adequate remedy by appeal for an erroneous order disqualifying counsel. *Cerberus Capital Mgmt., L.P.*, 164 S.W.3d at 383. Accordingly, an order of disqualification is reviewable by mandamus. *See id*.; *see also In re Sanders*, 153 S.W.3d 54, 56 (Tex. 2004) (orig. proceeding).

**Notice**

"An application to the court for an order and notice of any hearing thereon, not presented during a hearing or trial, must be served upon all other parties not less than three days before the time specified for the hearing, unless otherwise provided by these rules or shortened by the court." TEX. R. CIV. P. 21(b). When computing time, the day of the act, event, or default after which the designated period of time begins to run is not to be included. TEX. R. CIV. P. 4. "The last day of the period so computed is to be included, unless it is a Saturday, Sunday, or legal holiday, in which event the period runs until the end of the next day which is not a Saturday, Sunday, or legal holiday." *Id*. "Saturdays, Sundays, and legal holidays shall not be counted for any purpose in any time period of five days or less in these rules, except that Saturdays, Sundays, and legal holidays shall be counted for purpose of the three-day periods in Rules 21 and 21a, extending other periods by three days when service is made by mail." *Id*.

Here, service was not made by mail. Cogburn filed her motion on September 20, 2019, a Friday, and served the motion on Reiner that same day via facsimile. Also on September 20, Respondent's court administrator sent notice scheduling the hearing for September 24, a Tuesday, to the parties' counsel via email. "Saturdays, Sundays, and legal holidays *shall* be counted for

6

purpose of the three-day periods in Rules 21 and 21a." *Id*. (emphasis added). Accordingly, notice was sufficient because Relators were served with notice of the hearing on September 20, not less than three days before the time specified for the hearing. *See* TEX. R. CIV. P. 21(b).

**Disqualification**

"In representing a client, a lawyer shall not communicate or cause or encourage another to communicate about the subject of the representation with a person, organization or entity of government the lawyer *knows* to be represented by another lawyer regarding that subject, unless the lawyer has the consent of the other lawyer or is authorized by law to do so." TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 4.02(a), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, App. A (West 2013) (TEX. STATE BAR R. art. X, § 9) (emphasis added). Accordingly, Rule 4.02 forbids a lawyer from communicating with another person only when the lawyer knows that person has legal counsel in the matter. *Users Sys. Servs., Inc.*, 22 S.W.3d at 334.

Relators dispute Respondent's finding that Reiner knew Anderson represented Steven. It is undisputed that Anderson represented the Estate and that Cogburn, the executor, and Steven, Cogburn's brother, are beneficiaries of the Estate. However, Steven's status as a beneficiary does not automatically give rise to an attorney-client relationship with Anderson, the Estate's attorney. Generally, an attorney hired by an executor to advise her in administering the estate represents the executor and not the beneficiaries. *Vinson & Elkins v. Moran*, 946 S.W.2d 381, 402 (Tex. App.—Houston [14th Dist.] 1997, writ dism'd by agr.). But, it is conceivable that the executor's attorney could undertake to perform legal services as attorney for one or more beneficiaries. *Id*. Steven's testimony supports a conclusion that this scenario occurred with Anderson. Nevertheless, the pertinent question is whether the Estate met its burden of establishing that Reiner knew of that representation at the time he sent the email on September 11, 2019.

Respondent found that Reiner knew "*at all times* during the pendency of this litigation that Steven B. Jones was a party represented by counsel." This finding, however, is not supported by the record. On April 10, 2019, Anderson sent Reiner a letter in response to Reiner's request for documents related to the Estate of William Jones. Anderson stated that he represents the Estate of Delores Jones, not the Estate of William Jones, and, "I do not represent Bill Jones Jr., Steven Jones or Carolyn Cogburn, Individually." Anderson told Reiner he needed to contact them directly, provided addresses for Steven and Bill, and stated that he was copying Steven on the letter. Thus,

7

as of April 2019, Reiner was expressly told that Anderson did *not* represent Steven and to contact Steven directly.

Approximately five months later, Reiner sent the complained of email to Steven. In that email, Reiner acknowledges that Anderson "selectively shared communications" with Steven and that Steven is "not a party." At the September 24 hearing, Steven agreed that he is not part of the Estate. He testified that he is represented by Anderson, but he admitted never disclosing the representation to Reiner before September 12 when he instructed Reiner not to contact him. Steven further acknowledged that he had no written contract with Anderson, only an oral agreement to be represented by Anderson. Also, although asked at the hearing by Reiner, Steven did not testify as to when Anderson began representing him.

Although he believed documents had been produced that would reflect an attorney-client relationship with Anderson, he testified that he would not be surprised if Reiner had received no document stating that Anderson represented Steven. We have reviewed the record for any such documents evidencing that Anderson represents Steven, and we have found none. Nor does the record indicate that Steven ever compensated Anderson for any legal services. Finally, Steven never signed a waiver of conflict for Anderson to represent the Estate and Cogburn while also representing Steven. Although Steven's testimony may be sufficient to show that Anderson, as the executor's attorney, may have undertaken to perform legal services for Steven, a beneficiary, his testimony does not show that Reiner knew of such representation.

Respondent's order demonstrates that his own observations led him to conclude that Reiner knew of the attorney-client relationship between Steven and Anderson. Respondent found that Cogburn and Steven attended multiple hearings with Anderson, sat at counsel table with Anderson, have been called as witnesses, and instructed Anderson in front of Reiner. Respondent also found that Reiner heard Anderson talk with and advise both Cogburn and Steven, including how to proceed with representing the Estate. That Steven, as an heir and beneficiary, sat at counsel table with his sister, attended proceedings, or offered witness testimony does not establish Reiner's knowledge that Steven did so in the capacity as a client of Anderson's, as opposed to acting in his capacity as a beneficiary. Moreover, Steven did not testify to instructing Anderson or being advised by Anderson. And despite being within "eight feet" or "eyesight" of Anderson and Steven, as Respondent noted at the hearing, the record does not reflect that Reiner was privy to the content of any conversations between Anderson and Steven such that he knew Anderson offered legal

8

advice to Steven or that Steven instructed Anderson regarding the litigation. Further, Respondent's findings ignore that Anderson specifically told Reiner that he did not represent Steven.

At best, the record merely establishes the possibility that Reiner knew Steven was represented by Anderson. Such a possibility is insufficient to merit disqualification. *See Spears*, 797 S.W.2d at 656. As previously stated, disqualification is a severe remedy that should not be granted liberally. *Columbia Valley Healthcare Sys., L.P.*, 320 S.W.3d at 825; *Spears*, 797 S.W.2d at 656. Based on the record before us, we cannot conclude that the Estate met its burden of showing, with specificity, that at the time Reiner sent the email to Steven, he knew Steven to be represented by Anderson regarding the litigation. *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 4.02(a); *Spears*, 797 S.W.2d at 656 (burden is on movant to establish with specificity a violation of one or more disciplinary rules). Accordingly, Respondent abused his discretion by disqualifying Relators' counsel. *See In re Luecke*, 569 S.W.3d 313, 319 (Tex. App.—Austin 2019, orig. proceeding) (court abused discretion by granting motion to disqualify when movants failed to meet burden of establishing that disqualification was proper); *see also In Reeder*, 515 S.W.3d 344, 355 (Tex. App.—Tyler 2016, orig. proceeding) (court abused discretion by granting motion to disqualify because movant failed to establish violation of disciplinary rule).

## DENIAL OF REQUEST FOR ACCOUNTING

Relators contend that Respondent abused his discretion by finding that Marye is not an interested person in the Estate and denying Marye's motion for issuance of a show cause order, in which Marye asked Respondent to order Cogburn to appear and show cause for her failure to provide a demanded accounting. According to Relators, Respondent should have ordered Cogburn to produce the accounting because an interested person includes one who has a claim against the Estate.[5]

## Delay in Filing Mandamus Petition

We first address the Estate's contention that Relators' complaint is barred by laches because they waited too long to seek mandamus relief.

---

[5] In their brief, Relators contend that they are interested persons; however, only Marye requested the accounting and asserted interested person status. Accordingly, we will only address whether Respondent abused his discretion by concluding that Marye is not an interested person.

9

"Although mandamus is not an equitable remedy, its issuance is largely controlled by equitable principles." *Rivercenter Assocs. v. Rivera,* 858 S.W.2d 366, 367 (Tex. 1993). "One such principle is that 'equity aids the diligent and not those who slumber on their rights.'" *Id*. (quoting *Callahan v. Giles*, 137 Tex. 571, 576, 155 S.W.2d 793, 795 (1941)). "Thus, delaying the filing of a petition for mandamus relief may waive the right to mandamus unless the relator can justify the delay." *In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 676 (Tex. 2009) (orig. proceeding). "To invoke the equitable doctrine of laches, the moving party ordinarily must show an unreasonable delay by the opposing party in asserting it rights, and also the moving party's good faith and detrimental change in position because of the delay." *In re Laibe Corp.,* 307 S.W.3d 314, 318 (Tex. 2010) (orig. proceeding).

On August 9, 2019, Respondent signed the order denying Marye's motion for issuance of a show cause order. Nearly three months later, Relators filed their petition for writ of mandamus on October 31. According to Relators, the proceedings below are abated and no trial date is set. They contend that because the failure to produce the statutorily mandated accounting "casts doubt on the propriety of the representative's actions, it is possible that Relators would seek to have her removed or have a bond posted for its protection." They further maintain, "No undue burden or prejudice is [] borne by merely having to produce a document already in existence to an additional party entitled to it." Finally, they argue that the Estate provides no factual basis for its laches argument. These contentions do not explain why Relators failed to seek mandamus relief at an earlier date. Nevertheless, the Texas Supreme Court has found that a two-month delay in seeking mandamus relief is not necessarily unreasonable. *Id.,* 307 S.W.3d at 318. Relators' delay in filing their petition exceeds two months by approximately three weeks. We simply cannot conclude that a delay of two months and three weeks is per se unreasonable.

Moreover, the Estate must show its good faith and detrimental change in position because of the delay. *See id.,* 307 S.W.3d at 318. According to the Estate, the "unreasonable delay in appealing this claim of abuse of discretion has prejudiced the Estate of Delores Jones in the conduct of its business. The Estate of Delores Jones has no need to pay for the expense of accountings, and the Estate has made good-faith and detrimental change of position as a result of the delay of the Relators' stale claim." However, the Estate offers no evidence to support or explain this contention. *See id.* (Jackson Drilling did not demonstrate a detrimental change in position); *see also In re Cypress Tex. Lloyds*, 437 S.W.3d 1, 6 (Tex. App.—Corpus Christi 2011) (orig.

10

proceeding) ("Although Martinez generally asserts that this delay has resulted in a 'detrimental' change in her position and increased costs of litigation, she has offered no specific evidence supporting or explaining this allegation"). Nor is there anything in the record to demonstrate that the delay caused harm to the Estate.

Under these circumstances, we conclude that the Estate failed to satisfy its burden of proving that this portion of Relators' petition is barred by laches. *See Laibe Corp.,* 307 S.W.3d at 318.

**Interested Person**

"At any time after the expiration of 15 months after the date that the court clerk first issues letters testamentary or of administration to any personal representative of an estate, any person interested in the estate may demand an accounting from the independent executor." TEX. ESTATES CODE ANN. § 404.001(a) (West 2014). An "interested person" includes an "heir, devisee, spouse, creditor, or any other having a property right in or claim against an estate being administered[.]" *Id*. § 22.018(1) (West 2014). An order on a request for accounting is not final and appealable. *See Estate of Easley*, No. 07-15-00378-CV, 2017 WL 764603, at *2 (Tex. App.—Amarillo Feb. 24, 2017, no pet.) (mem. op.); *see also Pollard v. Pollard*, 316 S.W.3d 238, 241 (Tex. App.—Dallas 2010, no pet.). Accordingly, there is no adequate remedy by appeal and mandamus review is appropriate. *See Cerberus Capital Mgmt., L.P.*, 164 S.W.3d at 382.

In her third amended petition, Marye asserted that Cogburn committed wrongful acts following her appointment as the Estate's personal representative, deprived Marye of the use and enjoyment of her property by initiating eviction proceedings and forcing her from the property, failed to administer the Estate in accordance with her duties, and acted with gross negligence and malice. She sought a declaratory judgment as to her rights to the property and asserted claims for (1) conversion, having been excluded from the property in a manner inconsistent with her rights, (2) abuse of process, as Cogburn instituted eviction proceedings against her, (3) unjust enrichment/quantum meruit, seeking reimbursement for improvements and fixtures, (4) trespass to property, alleging that she was deprived of the beneficial use and enjoyment of her property when Cogburn entered without Marye's consent or authorization, (5) illegal lockout, stating that Cogburn changed the locks after filing an eviction proceeding and wrongfully excluded Marye from the property, and (6) promissory estoppel, having relied to her detriment on a representation that she could remain on the property until her death. Respondent found that, "as defined by the

Texas Estate[s] Code, Mary Jeannine Jones is not an interested person for the purposes of obtaining an accounting of the Estate of Delores Jones." We agree.

The estates code defines "claims" to include (1) liabilities of a decedent that survive the decedent's death, including taxes, regardless of whether the liabilities arise in contract or tort or otherwise; (2) funeral expenses; (3) the expense of a tombstone; (4) expenses of administration; (5) estate and inheritance taxes; and (6) debts due such estates. TEX. ESTATES CODE ANN. § 22.005 (West 2014). Based on the plain language of Section 22.005, the claims asserted in Marye's petition clearly do not fall within the last five subsections. *See id*. Nor do her claims qualify as liabilities of the decedent that survive the decedent's death. *See Matter of Estate of Casares*, 556 S.W.3d 913, 916 (Tex. App.—El Paso 2018, no pet.) (claim for damages against estate based on alleged failure of heirs to manage property and keep it in good repair after Decedent's death, did not fall within subsections (2), (3), (4), (5), or (6) and was not a claim within meaning of subsection (1) because it was not a pre-death liability of the decedent); *see also In re Davidson*, 485 S.W.3d 927, 931 (Tex. App.—Tyler 2016, orig. proceeding) ("A suit for damages resulting from the alleged misconduct of an independent executor is not a pre-death liability of the decedent").

Accordingly, we conclude that Respondent did not abuse his discretion by finding that Marye is not an interested person, as defined by the estates code, for purposes of obtaining an accounting.[6]

---

[6] We note that a person may also qualify as interested if she has a "legally ascertained pecuniary interest, real or prospective, absolute or contingent, which will be impaired or benefitted, or in some manner materially affected, by the probate [proceeding]." *Logan v. Thomason*, 146 Tex. 37, 202 S.W.2d 212, 215 (1947). Per the Texas Supreme Court, "the statutory definition of *interested person* includes anyone 'having a property right in or claim against an estate' … [w]e have reframed this standing test broadly as whether 'the proponent[ ] possesse[s] a pecuniary interest to be benefited and affected by the probate of the will and one which would ... be[ ] materially impaired in the absence of its probate.'" *Ferreira v. Butler*, 575 S.W.3d 331, 334-35 (Tex. 2019) (quoting *Logan*, 202 S.W.2d at 216). Marye's motion for issuance of show cause order asserted "interested person" status under Section 22.018(a) and the record does not indicate that she presented a "pecuniary interest" argument to Respondent to support her position. Even had she done so, the record suggests that Respondent held a hearing on the motion, the transcript of which is not before us. Accordingly, we cannot determine whether Marye raised the argument and, if so, whether she met her burden of proving that she is an "interested person" because of a legally ascertained pecuniary interest, real or prospective, absolute or contingent, which will be impaired, benefitted, or materially affected, by the probate proceeding. *See Walker v. Packer,* 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding) (party seeking mandamus relief has burden of providing sufficient record); *see also In re Boyd*, No. 12-19-00239-CV, 2019 WL 3940802, at *4 (Tex. App.—Tyler Aug. 21, 2019, orig. proceeding) (mem. op.) ("[i]t would be difficult to conclude, absent circumstances that were highly unusual or that made a ruling void, that a trial court could abuse its discretion in making a ruling, or failing to make a ruling, for a reason that was never presented to the court"); *In re Davidson*, 485 S.W.3d 927, 930 (Tex. App.—Tyler 2016, orig. proceeding) (person claiming to be an "interested person" bears burden of proof); *In re Greyhound Lines, Inc.*, No. 05-14-01164-CV, 2014 WL 5474787, at *3 (Tex. App.—Dallas Oct. 29, 2014, orig. proceeding) (mem. op.) ("We cannot mandamus a judge without giving her a chance to rule on the objections").

<u>**DISPOSITION**</u>

Because Respondent abused his discretion by granting the Estate's motion to disqualify, we ***conditionally grant*** Relators' petition for writ of mandamus in part.  We direct Respondent to vacate his September 26, 2019 order granting the motion to disqualify, and in its stead, to issue an order denying the motion to disqualify. We trust Respondent will promptly comply with this opinion and order. The writ will issue only if the trial court fails to do so ***within ten days of the date of the opinion and order.*** The trial court shall furnish this Court, ***within the time for compliance with its opinion and order,*** a certified copy of the order evidencing such compliance. We ***deny*** the petition for writ of mandamus in all other respects.  We also ***deny*** the Estate's request for sanctions.

<u>**JAMES T. WORTHEN**</u>
Chief Justice

Opinion delivered December 31, 2019.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**DECEMBER 31, 2019**

**NO. 12-19-00354-CV**

**MARYE JEANNINE JONES, MARYE GENEVA WATTS,
JEFFREY SAMMONS AND DR. KIMBERLY GREER,**
Relators
V.

**HON. CAMPBELL COX, II,**
Respondent

**ORIGINAL PROCEEDING**

ON THIS DAY came to be heard the petition for writ of mandamus filed by Marye Jeannine Jones, Marye Geneva Watts, Jeffrey Sammons and Dr. Kimberly Greer; who are the relators in appellate cause number 12-19-00354-CV and parties in trial court cause number PB1712782, pending on the docket of the 145th Judicial District Court of Nacogdoches County, Texas. Said petition for writ of mandamus having been filed herein on October 31, 2019, and the same having been duly considered, because it is the opinion of this Court that the petition for writ of mandamus be, and the same is, **conditionally granted, in part**.

And because it is further the opinion of this Court that the trial judge will act promptly and vacate his order of September 26, 2019, granting the Estate of Delores Jones's motion to disqualify and in its stead, to issue an order denying the motion; the writ will not issue unless the **HONORABLE CAMPBELL COX, II** fails to comply with this Court's order within ten (10) days from the date of this order. As it relates to Respondent's denial of Relators' motion for issuance of a show cause order, we ***deny*** the petition for writ of mandamus.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J. and Neeley, J.*