# NO. 12-23-00236-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN RE:* | *§* | |
| *TRENT BROOKSHIRE,* | *§* | *ORIGINAL PROCEEDING* |
| *RELATOR* | *§* | |

## *MEMORANDUM OPINION*

Relator, Trent Brookshire, filed this original proceeding, in which he seeks an order requiring Respondent[1] to vacate an order disqualifying his attorney from representing him and to sign an order denying the motion to disqualify filed by the Real Party in Interest, Caroline Meads Brookshire.[2] We deny the writ.

## BACKGROUND

On October 4, 2021, Trent and his wife, Caroline, signed an engagement letter with Rogge Dunn, an attorney who frequently represents executives in employment matters. Trent and Caroline retained Dunn to represent them regarding Trent's termination from his position as Chief Operating Officer (COO) at Brookshire Grocery Company (BGC) and Brookshire Holdings, Inc. (BHI). A few months after retaining Dunn, Trent and Caroline separated, and Caroline sought a divorce in July 2022. The following month, Dunn filed the underlying employment discrimination lawsuit against BGC and BHI, in which Trent asserted claims for disability discrimination and retaliation and sought damages for "lost compensation, lost employment benefits, pecuniary

---

[1] Respondent is the Honorable Clay M. White, Judge of the County Court at Law No. 3 in Smith County, Texas.

[2] Because the Relator and the Real Party in Interest have the same surname, we will refer to them by their first names for clarity and brevity.

losses, injury to [his] reputation and professional standing, and emotional pain and suffering[,] as well as punitive damages" and "reinstatement to his COO position."

On April 7, 2023, while the divorce action was proceeding, Caroline intervened in Trent's lawsuit, arguing that she has a "justiciable community property interest in certain damages potentially to be awarded to [Trent]," and because her interests are not aligned with Trent's interests, she has a legal or equitable interest in the lawsuit. Caroline pleaded that she "asserts the same claims against Defendants as those brought by [Trent]" and maintained that the intervention is "essential to effectively protect" her justiciable interest because Trent "intends to attempt to mitigate and/or deny [Caroline] her community property interests[.]" Caroline also sought a declaratory judgment regarding the nature and extent of her community property interests in any recovery by Trent, and she pleaded that if she were not allowed to intervene, Trent would not adequately protect her community property interests. According to Caroline, without her presence in the lawsuit, Trent could "artfully draft" pleadings, motions, and settlement documents "to intentionally craft damages issues . . . to try to deny[] the community marital estate its recovery."

On April 12, BGC and BHI deposed Caroline in Trent's lawsuit. During said deposition, Dunn, who appeared at the deposition as Trent's attorney, extensively cross-examined Caroline. Dunn questioned Caroline regarding her feelings toward Trent and asked whether she (1) received financial support from the Brookshire family, (2) intended to testify that Trent should lose his discrimination lawsuit, (3) knew who was to blame for communication problems between Trent and his father (the Chief Executive Officer of BGC and BHI, as well as Trent's former boss), (4) knew how many days Trent took off from work in 2019, (5) possessed evidence supporting her contention that Trent worked only fifty percent of the time from January to October 18, 2021, when he was terminated, and (6) knew who Trent played golf with and whether his golfing was business related. Dunn also asked Caroline (1) what evidence she possessed regarding Trent's alleged use of certain medications, (2) how many times she flew on the Brookshire family's private plane, (3) whether she and Trent had "outbursts" at home, (4) the nature of her father's communications with BGC's general counsel, (5) whether she provided information to BGC to assist BGC with Trent's lawsuit, and (6) whether she was attempting to prevent Trent from gaining custody of their children.

At one point during the deposition, Dunn indicated that Caroline did not fully answer one of his questions, and he stated to Caroline, "we're going to keep asking. If we have to go to the

2

judge, we'll go to the judge and come back to Dallas again." Dunn eventually asked Caroline about hiring his firm and signing a representation agreement, and she testified, "I don't remember doing that, but I'm sure if you have it, I did." The attorneys representing Caroline asked Dunn if he ever represented Caroline, and Dunn stated, "she's not my client at this point." The parties went off the record to discuss the matter, and when they returned, Caroline's counsel stated, "During the deposition, it has become clear that there was a possible prior representation of Ms. Caroline Brookshire. The parties have decided to adjourn the deposition . . . at this time so that we can evaluate that issue as counsel and decide how to proceed."

Caroline subsequently filed a motion to disqualify Dunn, asserting that Dunn could not act adversely to her in the same matter in which he previously agreed to represent her. In her motion to disqualify, Caroline quoted portions of Dunn's cross-examination of her at the deposition, and pleaded that she and her attorneys first became aware of an existing attorney-client relationship between Dunn and Caroline during the deposition. Caroline attached documents indicating that, at the request of her counsel, Dunn provided a copy of the engagement agreement signed by Trent and Caroline. The engagement agreement stated that Dunn and his law firm agreed to represent Trent and Caroline and stated that the representation is limited to "providing advice regarding your rights at Brookshire Grocery, evaluating and negotiating a severance agreement[,] and possibly pursuing claims against Brookshire Grocery Co[mpany]." Paragraph ten of the engagement agreement provided that the parties' relationship "automatically ends upon written notice or the end of the [a]ssignment."

Caroline's motion to disqualify also pointed out that in an email to Caroline's counsel on May 16, 2023, Dunn asserted that because Caroline told him she did not want to sue BGC, his representation of Caroline automatically terminated when Trent sued BGC and BHI after settlement negotiations failed. Dunn's email also stated that it "further confirms" that his representation of Caroline "has ended." After corresponding with Caroline's counsel regarding the potential conflict of interest, Dunn filed an answer to Caroline's petition in intervention on Trent's behalf, denying each of Caroline's allegations and praying that she "take nothing[.]" Moreover, Dunn retained an attorney, and Dunn's counsel sent Caroline's attorney a letter stating that Dunn would not agree to withdraw from representing Trent. After conducting an evidentiary

3

hearing on Caroline's motion, during which Dunn was the sole witness, Respondent signed an order granting Caroline's motion to disqualify Dunn, and Trent then filed this original proceeding.[3]

<h2>PREREQUISITES TO MANDAMUS</h2>

Mandamus is an extraordinary remedy. *In re Sw. Bell Tel. Co., L.P.*, 235 S.W.3d 619, 623 (Tex. 2007) (orig. proceeding). To be entitled to mandamus relief, a relator must establish that (1) the trial court clearly abused its discretion and (2) he lacks an adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding). A relator must establish both prerequisites to mandamus. *In re Fitzgerald*, 429 S.W.3d 886, 891 (Tex. App.—Tyler 2014, orig. proceeding).

Because there is generally no adequate appellate remedy if a party's counsel is disqualified, Respondent's order of disqualification is reviewable by mandamus. *See In re Murrin Bros. 1885, Ltd.*, 603 S.W.3d 53, 57 (Tex. 2019) (orig. proceeding); *In re Cerberus Capital Mgmt.*, *L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding). We therefore must determine whether Respondent abused his discretion by disqualifying Dunn. *See In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 422 (Tex. 2002) (orig. proceeding). A court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). A court has no discretion in determining what the law is or applying the law to the facts. *Prudential*, 148 S.W.3d at 135; *Walker*, 827 S.W.2d at 840. Although we will not substitute our judgment for that of the trial court, we must consider whether the trial court acted without reference to guiding rules and principles. *In re M-I L.L.C.*, 505 S.W.3d 569, 574 (Tex. 2016) (orig. proceeding).

<h2>DISQUALIFICATION</h2>

Trent seeks a writ requiring Respondent to vacate his order disqualifying Dunn and to sign an order denying Caroline's motion to disqualify. Specifically, Trent argues that "[t]he trial court abused its discretion by disqualifying Dunn without any evidence of actual prejudice."

---

[3] On the same date, Respondent also signed an order striking Caroline's intervention. Said order is not challenged in this proceeding. Neither party contends that the fact that Caroline is no longer involved in Trent's lawsuit against BGC and BHI renders Respondent's order moot. Furthermore, Respondent's striking of Caroline's intervention does not impact our analysis of Trent's petition for writ of mandamus.

**Applicable Law**

Disqualification of counsel is a severe remedy that can "result in immediate and palpable harm, disrupt trial court proceedings, and deprive a party of the right to have counsel of choice." *In re Nitla S.A. de C.V.*, 92 S.W.3d at 422. Although courts frequently look to the disciplinary rules when deciding disqualification issues, "the disciplinary rules are merely guidelines—not controlling standards—for disqualification motions." *Id*. Even if a lawyer violates a disciplinary rule, the party seeking disqualification must show that the "lawyer's conduct caused actual prejudice that requires disqualification." *Id*. "Technical compliance with ethical rules might not foreclose disqualification, and conversely a violation of ethical rules might not require disqualification." *In re Liebbe*, No. 12-19-00044-CV, 2019 WL 1416637, at *3 (Tex. App.—Tyler Mar. 29, 2019, orig. proceeding) (mem. op.). When considering a motion to disqualify, "the trial court must strictly adhere to an exacting standard to discourage a party from using the motion as a dilatory trial tactic." *Id*. The movant must establish with specificity a violation of the disciplinary rules. *In re Thetford*, 574 S.W.3d 362, 373-74 (Tex. 2019) (orig. proceeding); *Liebbe*, 2019 WL 1416637, at *3. "Mere allegations of unethical conduct or evidence showing a remote possibility of a violation of the disciplinary rules will not suffice to merit disqualification." *Liebbe*, 2019 WL 1416637, at *3. Furthermore, a court must consider the extent of the potential prejudice to the nonmovant from disqualifying his counsel. *Murrin Bros.*, 603 S.W.3d at 57.

**Analysis**

Trent and Caroline agree that Rule 1.09 of the Texas Rules of Professional Conduct governs the instant case. In addition, Trent concedes that Dunn formerly represented Caroline and cross-examined her at her deposition, and his sole complaint is that the trial court disqualified Dunn without evidence demonstrating actual prejudice to Caroline.

Rule 1.09(a) of the Texas Rules of Professional Conduct provides as follows: "Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client[] . . . (3) if it is the same or a substantially related matter." TEX. R. PROF'L CONDUCT R. 1.09(a)(3), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, App. A (West 2019) (Tex. State Bar R. art. X, § 9). Rule 1.09(a) prohibits adverse representation, except with prior consent, when the party seeking disqualification shows the existence of any of the three circumstances set forth in subparagraph (a) of Rule 1.09. *Id*.; *see Liebbe*, 2019 WL 1416637, at *3. The limitation contained in Subsection three of Rule

1.09(a) "prevents a lawyer from switching sides and representing a party whose interests are adverse to a person who disclosed confidences to the lawyer while seeking in good faith to retain the lawyer." TEX. R. PROF'L CONDUCT R. 1.09, cmt. 4A. Even if the attorney withdrew from the representation before the client disclosed any confidential information, the prohibition in Rule 1.09(a)(3) still applies. *Id.*

If an attorney works on a matter, an irrebuttable presumption arises that the attorney obtained confidential information during the representation. *Thetford*, 574 S.W.3d at 372-73 (applying irrebuttable presumption in context of motion to disqualify pursuant to Rules 1.02, 1.06, and 1.09); *In re Columbia Valley Healthcare Sys., L.P.*, 320 S.W.3d 819, 824 (Tex. 2010) (orig. proceeding) (applying irrebuttable presumption in case involving disqualification pursuant to Rule 1.09); *In re Innov. Res. Sol., LLC*, No. 12-15-00254-CV, 2016 WL 1254058, at *3-4 (Tex. App.—Tyler Mar. 31, 2016, orig. proceeding) (mem. op.) (applying irrebuttable presumption in case involving disqualification pursuant to Rule 1.09). "The reason this presumption is conclusive is the need 'to prevent the moving party from being forced to reveal the very confidences sought to be protected.'" *Columbia Valley Healthcare Sys.*, 320 S.W.3d at 824 (quoting *In re Amer. Home Prods. Corp.*, 985 S.W.2d 68, 74 (Tex. 1998) (orig. proceeding)). "The test for disqualification is met by demonstrating a genuine *threat* of disclosure, not an actual materialized disclosure." *Grant v. Thirteenth Court of Appeals*, 888 S.W.2d 466, 467 (Tex. 1994) (orig. proceeding).

As mentioned above, Trent contends that the trial court abused its discretion by disqualifying Dunn without evidence of "actual prejudice" to Caroline. Therefore, we must determine whether Caroline was required to provide evidence of actual prejudice. In *Liebbe*, this Court was tasked with determining whether a party seeking disqualification of an attorney due to an alleged violation of Rule 1.09(a)(2) was required to demonstrate actual prejudice. *Liebbe*, 2019 WL 1416637, at *5. In beginning our analysis in *Liebbe*, we noted that many of the cases that require evidence of actual prejudice (1) involve rules other than Rule 1.09 and (2) predate our opinion in *In re Innovation Resource Solution, Inc., L.L.C. Id*. at *5-6 (citing *In re Innov. Res. Sol., L.L.C.*, 2016 WL 1254058, at *5-6.). We also explained that although the comments to the Texas Rules of Professional Conduct do not add obligations to the rules, they often illustrate how the rules are applied and guide courts in interpreting them. *Id*. at *6. Additionally, this Court pointed out that we interpret disciplinary rules in accordance with the rules of statutory construction, and we explained that, unlike the comments to some of the other rules of professional

conduct, the comments to Rule 1.09 "contain no reference that could be interpreted as requiring a party to show actual prejudice in addition to a violation of Rule 1.09(a)(2)." *Id*. We held that "[b]ecause neither the plain language of Rule 1.09, nor its comments, require a showing of actual prejudice, we decline to read an actual prejudice requirement into the plain language of Rule 1.09." *Id*. Accordingly, we concluded that evidence of actual prejudice was not required, and we held that because the party seeking disqualification established a violation of Rule 1.09, the relator failed to satisfy her burden of proving that the respondent abused his discretion by granting the motion to disqualify. *Id*.

Less than two months after we decided *Liebbe*, the Texas Supreme Court again addressed disqualification of counsel due to an alleged violation of Rule 1.09. *See Thetford*, 574 S.W.3d at 372. In *Thetford*, the Supreme Court confirmed the existence of an irrebuttable presumption, stating as follows:

> We have repeatedly said that lawyers who violate the conflict-of-interest rules must be disqualified because there is an irrebuttable presumption that a lawyer obtains a client's confidential information during representation. Although the attorney will not be presumed to have shared that information with his current client, the 'appearance of impropriety' demands that the trial court disqualify counsel.

*Id*. at 373 (footnotes omitted).

In support of his argument that evidence of actual prejudice is required, Trent cites the Texas Supreme Court's decision in *Murrin Brothers,*[4] which was decided less than seven months after *Thetford*. Trent points out that in *Murrin Brothers*, after noting that the movant sought disqualification under Rules 1.06 and 1.09, the Texas Supreme Court stated that "[e]ven if a violation of the disciplinary rules is established, the party requesting disqualification must also show it will suffer prejudice if disqualification is not granted." *Murrin Bros.*, 603 S.W.3d at 57 (citing *Nitla*, 92 S.W.3d at 422). Citing two post-*Murrin Brothers* opinions by the El Paso Court of Appeals, which discussed *Murrin Brothers*, Trent argues that *Murrin Brothers* "confirmed the need for proof of actual prejudice under rule 1.09." *See In re TMD Defense & Space, LLC*, 649 S.W.3d 764, 773-74 (Tex. App.—El Paso 2022, orig. proceeding) (reiterating that *Murrin Brothers* requires actual prejudice, but concluding that the trial court did not abuse its discretion

---

[4] The Texas Supreme Court decided *Murrin Brothers* on December 20, 2019, just a few months after our opinion issued in *Liebbe*. *See In re Murrin Bros. 1885, Ltd.*, 603 S.W.3d 53 (Tex. 2019) (orig. proceeding); *In re Liebbe*, No. 12-19-00044-CV, 2019 WL 1416637, at *3 (Tex. App.—Tyler Mar. 29, 2019, orig. proceeding) (mem. op.)

by finding a reasonable probability that a client's confidential information could be used to the client's detriment); *In re Fenenbock,* 621 S.W.3d 724, 736-38 (Tex. App.—El Paso 2020, orig. proceeding) (stating that *Murrin Brothers* "appears to refute" the proposition that proof of prejudice is not required, but ultimately concluding that the party seeking disqualification established that she would be "presumptively prejudiced"). Trent asserts that *Murrin Brothers* overruled this Court's opinions in *Liebbe* and *Innovation Resource Solution*, as well as a 2006 opinion of our sister court in El Paso, each of which held that evidence of actual prejudice is not required when a party seeks disqualification under Rule 1.09. *See Liebbe*, 2019 WL 1416637, at *6; *Innov. Res. Sol.*, 2016 WL 1254058, at *4; *Cimarron Agric., Ltd. v. Guitar Holding Co., L.P.*, 209 S.W.3d 197, 203-05 (Tex. App.—El Paso 2006, no pet.). Additionally, Trent contends that *Murrin Brothers* "leaves no doubt: [R]ule 1.09's irrebuttable presumption no longer suffices to support disqualification[.]" We disagree.

The underlying lawsuit in *Murrin Brothers* was a shareholder derivative proceeding, in which one group (the Murrin Group) sought to disqualify another group's attorney for allegedly violating Rules 1.06(a) and 1.09 of the Texas Rules of Professional Conduct by representing parties on both sides of the same lawsuit. *Murrin Bros.*, 603 S.W.3d at 57-58. After noting that the Murrin Group alleged violations of both Rules 1.06(a) and 1.09, the Court then explained that "the foundation of the Murrin Group's disqualification argument" is the notion that an attorney was representing parties who are "directly adverse to one another—that they are 'opposing parties' for purposes of Rule 1.06(a)."[5] *Id*. at 58. Specifically, the Murrin Group claimed that the same law firm could not represent the other ownership group and the company. *Id.* at 56. The Court noted that in shareholder derivative litigation, companies are simultaneously plaintiff and defendant, depending on how one looks at it. *Id*. at 58. Thus, "the proper inquiry is to look to whether the substance of the challenged representation requires the lawyer to take conflicting positions or to take a position that risks harming one of his clients[]" in the derivative litigation. *Id.*

After acknowledging that it announced no categorical rule governing dual representation in derivative litigation, the Court then considered the true extent of the entities' adversity. *Id.* at

---

[5] Rule 1.06(a) prohibits a lawyer from representing opposing parties to the same litigation. TEX. R. PROF'L CONDUCT R. 1.06(a), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, App. A (West 2019) (Tex. State Bar R. art. X, § 9).

59. It is against this backdrop that the Court noted that the Murrin Group contended "as it must" that dual representation would prejudice it. *Id*. at 59. The Court framed its analysis solely in terms of Rule 1.06, concluding that when determining whether a company and individual defendants are "opposing parties" for purposes of Rule 1.06(a) in a derivative lawsuit, courts must consider "the true extent of their adversity under the circumstances." *Id*. at 58-60. The Court discussed the various interests at play between the parties, including an analysis of the Murrin Group's arguments regarding potentially confusing the jury or prejudicing the jury against the Murrin Group, and ultimately held that the trial court did not abuse its discretion by denying the motion to disqualify. *Id*. at 60-62.

With the exception of mentioning at the outset that the Murrin Group sought disqualification under both Rules 1.06(a) and 1.09, the Court did not discuss Rule 1.09, let alone conduct its analysis based upon it. Moreover, the Court did not distinguish, analyze, or mention its precedent holding that if an attorney works on a matter, an irrebuttable presumption arises that the attorney obtained confidential information during the representation, or this Court's cases that explicitly applied said precedent in the context of Rule 1.09. *See Thetford*, 574 S.W.3d at 373; *Columbia Valley Healthcare System*, 320 S.W.3d at 824; *Liebbe*, 2019 WL 1416637, at \*6; *Innov. Res. Sol.*, 2016 WL 1254058, at \*4. In addition, the language the Texas Supreme Court used in *Murrin Brothers* when discussing the prejudice requirement is substantively identical to the language it used in *Nitla* in 2002; in fact, when mentioning the prejudice requirement in *Murrin Brothers*, the Texas Supreme Court directly cited solely to its own holding in *Nitla*. *Murrin Bros., Ltd.*, 603 S.W.3d at 57 (citing *Nitla* for the proposition that "[e]ven if a violation of the disciplinary rules is established, the party requesting disqualification must also show it will suffer prejudice if disqualification is not granted."); *see Nitla*, 92 S.W.3d at 422 (holding that "[e]ven if a lawyer violates a disciplinary rule, the party requesting disqualification must demonstrate that the opposing lawyer's conduct caused actual prejudice that requires disqualification."). *Murrin Brothers* simply recognized that disqualification in shareholder derivative litigation presents a unique situation due to the parties' alignment. For all these reasons, we conclude that *Murrin Brothers* did not tacitly overrule either the Texas Supreme Court's own precedent regarding the irrebuttable presumption (*Thetford* and *Columbia Valley Healthcare System*) or this Court's precedent that actual prejudice is not required to disqualify counsel for violating Rule 1.09, as set forth in *Liebbe* and *Innovation Resource Solution*. Thus, we reject the characterization of *Murrin*

9

*Brothers* as a tectonic shift in the law regarding whether evidence of actual prejudice is required when a party seeks disqualification of counsel pursuant to Rule 1.09.

Because we conclude that **Murrin Brothers** did not overrule this Court's precedent in **Liebbe** and **Innovation Resource Solution**, we further conclude that an irrebuttable presumption arose that Dunn obtained Caroline's confidential information, and Respondent did not abuse his discretion by determining that disqualification was appropriate pursuant to Rule 1.09. *See **In re Thetford***, 574 S.W.3d at 372-73; **Columbia Valley Healthcare Sys.**, 320 S.W.3d at 824; **Innov. Res. Sol.**, 2016 WL 1254058, at *4; *see also* TEX. R. PROF'L CONDUCT R. 1.09. Accordingly, Respondent did not abuse his discretion by implicitly concluding that Caroline was not required to provide evidence of actual prejudice and granting her motion to disqualify Trent's counsel. *See **Cerberus Capital Mgmt.***, 164 S.W.3d at 382; **Prudential**, 148 S.W.3d at 135-36; **Walker**, 827 S.W.2d at 839; **Liebbe**, 2019 WL 1416637, at *6; **Innov. Res. Sol.**, 2016 WL 1254058, at *4; *see also* TEX. R. PROF'L CONDUCT R. 1.09.

Furthermore, even if a showing of actual prejudice were required to support disqualification of counsel post-**Murrin Brothers**, we conclude that Respondent did not abuse his discretion by impliedly finding that Caroline proved such prejudice. When a court considers prejudice, it examines the prejudice proven by the movant as well as the prejudice that the nonmovant will incur as a result of disqualification of his chosen counsel. **Murrin Bros.**, 603 S.W.3d at 57. Here, Caroline showed that she was prejudiced by having her former attorney cross-examine her during her deposition. Respondent acknowledged on the record that he reviewed the deposition, and from our review of the deposition, Respondent's implied finding that Dunn acted adversely to Caroline is strongly supported by the record. Not only did Dunn question Caroline extensively on matters pertaining to Trent's case against BGC and BHI, but he also delved into matters far afield from said case. After his extensive questioning of Caroline, Dunn also attempted to use her previous engagement of his services to bolster his own credibility.

During the hearing on the motion to disqualify, Dunn admitted that Caroline had a conversation with him without Trent being present. Dunn claimed that this one conversation was innocuous and the only instance in which Caroline provided information to him without Trent being included in the conversation.[6] Regardless of the number of conversations or the information

---

[6] In his brief, Trent notes that Dunn's assertions were not controverted by Caroline. Of course, Caroline being tasked with the Hobson's choice of either (1) disclosing confidential communications to establish prejudice but

exchanged, Dunn admitted that he had a confidential conversation with Caroline. Further, Dunn disclosed another communication from Caroline when he shared that Caroline did not want to pursue litigation against BGC and BHI.

Trent argues that because any other attorney he hires will also act adversely to Caroline, she failed to demonstrate prejudice. We disagree. Dunn is not merely another attorney. Rather, he is Caroline's former counsel and is therefore privy to any confidential information that she shared, as opposed to an attorney who had not previously represented her. Against these very real prejudices, Respondent weighed the prejudice to Trent. Dunn was Trent's chosen counsel, and having to retain new counsel does affect the litigation. We recognize that Respondent had to assign some weight to the prejudice to Trent from the decision to disqualify Dunn. *See id.* But Respondent is in the best position to know his court's docket. Respondent can alleviate much of the potential prejudice to Trent by extending the discovery deadlines to provide new counsel ample time for preparation. Respondent also knows the status of his court's spring docket and how easily a new trial setting can be achieved if Trent's new counsel needs more preparation time than a January 2024 trial setting allows.

Based on this record, Trent failed to show that Respondent abused his discretion by finding that Caroline was prejudiced to an extent necessary to disqualify Dunn from further representing Trent in the underlying action. *See Prudential*, 148 S.W.3d at 135-36*; Walker*, 827 S.W.2d at 839.

<strong><u>DISPOSITION</u></strong>

We conclude that Trent failed to demonstrate his entitlement to mandamus relief. *See Prudential*, 148 S.W.3d at 135-36; *Fitzgerald*, 429 S.W.3d at 891. Having so determined, we *deny* his petition for writ of mandamus.

<strong>GREG NEELEY</strong><br>Justice

Opinion delivered November 8, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

---

then ensure that the communications were then known by her adversary or (2) relying upon the testimony of her former attorney who now represents her adversary and opposes her motion to disqualify him is precisely the reason the Texas Supreme Court gave for not requiring a showing of prejudice in conflict-of-interest cases. *See In re Columbia Valley Healthcare Sys., L.P.*, 320 S.W.3d 819, 824 (Tex. 2010) (orig. proceeding).

11



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**NOVEMBER 8, 2023**

**NO. 12-23-00236-CV**

**TRENT BROOKSHIRE,**
Relator
V.

**HON. JUDGE CLAY M. WHITE,**
Respondent

### ORIGINAL PROCEEDING

ON THIS DAY came to be heard the petition for writ of mandamus filed by Trent Brookshire; who is the relator in appellate cause number 12-23-00236-CV and the plaintiff in Cause No. 74544-B, pending on the docket of the County Court at Law No. 3 of Smith County, Texas. Said petition for writ of mandamus having been filed herein on September 11, 2023, and the same having been duly considered, because it is the opinion of this Court that the writ should not issue, it is therefore CONSIDERED, ADJUDGED and ORDERED that she said petition for writ of mandamus be, and the same is, hereby **denied**.

Greg Neeley, Justice
*Panel consisted of Worthen, C.J., Hoyle, J. and Neeley, J.*